**WAUSAU UNDERWRITERS INSURANCE COMPANY, Plaintiff,**

v.

**Nancy Reece HOWSER, Defendant.**

**Civ. A. No. 88–2942.**

United States District Court, D. South Carolina, Columbia Division.

Jan. 8, 1990.

Hoover Blanton, Columbia, S.C., for plaintiff.

Charles Hill, Columbia, S.C., for defendant.

## ORDER

HENDERSON, District Judge.

This matter is before the Court on the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. Wausau Underwriters Insurance Company ("Wausau") brought this declaratory judgment action against its insured, Nancy Reece Howser ("Howser"), pursuant to 28 U.S.C. § 2201 for a declaration regarding coverage under the uninsured motorist provision of an automobile insurance policy. The parties agree that no genuine issue of material fact is in dispute and this action can be resolved as a matter of law. For the reasons stated below, the Court grants Wausau's motion for summary judgment and denies Howser's motion for summary judgment.

### I.

On the night of June 13, 1987, Howser and her friend, Lisa Annette Shealy ("Shealy"), left a bowling alley in their hometown of Columbia, South Carolina, and headed home in a 1985 Chevrolet S–10 Blazer driven by Howser and owned by her father. After stopping at a McDonald's restaurant at the intersection of Decker Boulevard and Trenholm Road, they drove down Trenholm Road in the inside lane of the four-lane road. After about one-tenth of a mile, the Blazer was "bumped" from behind. Howser looked in the rear view mirror and saw a car behind them with a driver and no passengers. The car bumped the Blazer two more times and Howser accelerated the Blazer. The driver of the other car, who was unknown to them, pulled his car alongside the Blazer in the outside lane and yelled at them to roll down their window, slow down and stop their car. He pointed a pistol at the Blazer's passenger window where Shealy was seated. Howser made a quick left turn onto a side street to avoid the stranger's assault. As she completed her turn, the gunman shot at the Blazer. A bullet entered the rear of the vehicle, fragmented, pierced the driver's car seat and entered Howser's back in three places. Howser managed to bring the Blazer to a stop before losing consciousness and Shealy summoned help. The gunman continued traveling down Trenholm Road. Neither he nor his vehicle has been identified.

The injuries that Howser sustained were the result of the gunshot. Neither Howser nor Shealy was hurt when the other vehicle bumped the Blazer.

Howser initially brought a "John Doe" action in the Court of Common Pleas for Richland County, South Carolina, seeking to establish liability under the uninsured motorist provision of her father's automobile liability policy. *See* S.C.Code Ann. § 38–77–180 (Law.Co-op.1989). Wausau then brought this action seeking a declara-

tion that Howser's injuries are not covered under the policy. Howser's state action has since been removed from the trial roster.

## II.

■ The sole issue in this declaratory judgment action is whether the automobile insurance policy on Howser's father's Blazer, a vehicle registered in South Carolina, provides uninsured motorist coverage for Howser's gunshot injuries under South Carolina law. The uninsured motorist provision of the policy states:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by a covered person; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

There is no dispute that Howser is a "covered person" under the policy in question. There is a dispute, however, as to whether Howser's injuries were "caused by an accident." In South Carolina an "accident" is viewed from the victim's perspective and, if the injury, although intentionally inflicted, is as to the victim "unforeseen and not the result of his own misconduct," it is accidentally sustained within the meaning of the ordinary accident insurance policy.[1] This provision therefore does not bar Howser's claim. The remaining policy condition in dispute is that the uninsured motorist's liability "must arise out of the ownership, maintenance or use of the uninsured motor vehicle."

Automobile liability insurance is mandatory in South Carolina under a statute which requires that an automobile insurance policy on a South Carolina motor vehicle contain a provision insuring "against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of the vehicle. S.C. Code Ann. § 38–77–140 (Law.Co-op.1989). Every automobile liability policy must also contain a provision "undertaking to pay the insured all sums which he is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle." S.C.Code Ann. § 38–77–150 (Law.Co-op. 1989). The amount that an insured is "legally entitled to recover as damages" from an uninsured motorist is necessarily qualified by the language of section 38–77–140 limiting the wrongdoer's liability to damages "arising out of the ownership, maintenance, or use of" the wrongdoer's vehicle. The "arising out of the ownership, maintenance or use" language in the policy tracks the statutory language.

The current South Carolina statute applicable when the owner or operator of the uninsured vehicle is unknown imposes additional conditions on recovery under an uninsured motorist provision:

Conditions to sue or recover under uninsured motorist provision when owner or operator of motor vehicle causing injury or damage is unknown.

If the owner or operator of any motor vehicle which causes bodily injury or property damage to the insured is unknown, there is no right of action or recovery under the uninsured motorist provision, unless:

(1) the insured or someone in his behalf has reported the accident to some appropriate police authority within a reasonable time, under all the circumstances, after its occurrence;

(2) the injury or damage was caused by physical contact with the unknown vehicle, or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle;

(3) the insured was not negligent in failing to determine the identity of the other vehicle and the driver of the other vehicle at the time of the accident.

S.C.Code Ann. § 38–77–170 (Law.Co-op. 1989).

South Carolina's first uninsured motorist statute was enacted in 1959. In 1963 the predecessor statute to section 38–77–170 was amended to require physical contact

---

**1.** *Chapman v. Allstate Insurance Company,* 263    S.C. 565, 570, 211 S.E.2d 876, 879 (1975).

with the unknown vehicle. For years the South Carolina Supreme Court strictly construed the statutory requirement that the injury or damage must have been caused by physical contact with the unknown vehicle.[2] In *Davis v. Doe* the Supreme Court stated: "If it is advisable that the statute be changed, the solution lies within the province of the Legislature. We have no right to legislate the provision from the statute or to modify its application under the guise of judicial interpretation." 285 S.C. 538, 541, 331 S.E.2d 352, 354 (1985), quoting *Coker v. Nationwide Insurance Company*, 251 S.C. 175, 182, 161 S.E.2d 175, 178 (1968). After *Davis* the South Carolina General Assembly modified the statute. Amendments to section 38–77–170 which became effective in 1987 added the language "or the accident must have been witnessed by someone other than the owner or operator of the insured vehicle." Howser argues in part that, because Shealy was an independent witness to the accident, the Court must necessarily conclude the gunshot injury is covered under section 38–77–170.

Neither the South Carolina Supreme Court nor the South Carolina Court of Appeals has yet decided the extent to which the 1987 amendments expand the coverage of an uninsured motorist provision.[3] The enumerated conditions of section 38–77–170, however, have been and continue to be preceded by language restricting application of the statute to situations where "the owner or operator of any *motor vehicle which causes bodily injury or property damage to the insured* is unknown." S.C. Code Ann. § 38–77–170 (Law.Co-op.1989) (emphasis added). Moreover, the South Carolina Supreme Court has consistently declared that uninsured motorist coverage should not by judicial interpretation be extended beyond the plain intent of the statute.[4] It therefore seems clear that, before the Court can consider the enumerated conditions of section 38–77–170, Howser must show two related prerequisites for coverage. First, the motor vehicle with the unknown owner or driver must have caused the damage or injury as provided in section 38–77–170. Second, the injury must have "aris[en] out of the ownership, maintenance, or use of" the wrongdoer's motor vehicle as provided in section 38–77–140.[5] The Court concludes that Howser has es-

---

**2.** *Davis v. Doe*, 285 S.C. 538, 331 S.E.2d 352 (1985) (no "physical contact with the unknown vehicle" where wheel bearing from unidentified vehicle broke through windshield of car in which victim was riding); *Sapp v. State Farm Automobile Insurance Company*, 272 S.C. 301, 251 S.E.2d 745 (1979) (no contact where unidentified vehicle caused another driver to swerve his vehicle and strike car in which insured was riding); *Spaulding v. State Farm Mutual Insurance Company*, 262 S.C. 95, 202 S.E.2d 653 (1974) (causal physical contact sufficient, hence coverage, where unidentified vehicle struck another car and caused it to hit plaintiff's car); *Wynn v. Doe*, 255 S.C. 509, 180 S.E.2d 95 (1971) (no "physical contact with the unknown vehicle" where motorcycle encountered slick substance spilled on highway by unidentified vehicle); *Coker v. Nationwide Insurance Company*, 251 S.C. 175, 161 S.E.2d 175 (1968) (collision between insured's vehicle and vehicle with which unidentified vehicle was racing did not constitute "physical contact").

**3.** The South Carolina Court of Appeals recently addressed the amended statute in *Chestnut v. South Carolina Farm Bureau*, 298 S.C. 151, 378 S.E.2d 613 (Ct.App.1989). In that case an unidentified vehicle forced the plaintiff off the road. There was no physical contact with the unknown vehicle, nor was there a witness other than the owner, who was a passenger, and the driver of the insured vehicle. Without addressing the extent to which the amendments have expanded uninsured motorist coverage, the court reversed the lower court's grant of summary judgment to the plaintiff on the ground that the statute requires either physical contact with the unknown vehicle or an independent witness, neither of which occurred.

**4.** *Davis v. Doe*, 285 S.C. 538, 541, 331 S.E.2d 352, 354 (1985); *Marchant v. South Carolina Insurance Company*, 281 S.C. 585, 586, 316 S.E.2d 707, 708 (1984); *Coker v. Nationwide Insurance Company*, 251 S.C. 175, 182, 161 S.E.2d 175, 178 (1968); *Morrow v. American Mutual Fire Insurance Company*, 246 S.C. 495, 501, 144 S.E.2d 489, 492 (1965); *Davidson v. Eastern Fire and Casualty Insurance Company*, 245 S.C. 472, 477, 141 S.E.2d 135, 137 (1965); *Laird v. Nationwide Insurance Company*, 243 S.C. 388, 397, 134 S.E.2d 206, 210 (1964).

**5.** The South Carolina decisions do not clearly distinguish between "use" and "cause." Because the two statutes use differing language, however, the Court interprets them as imposing separate conditions. See discussion, *infra*.

tablished neither that the gunman's vehicle caused her injury nor that her injury arose out of the use of his vehicle.

### A.

■ The Court can find no South Carolina case in which insurance coverage has been sought for gunshot injuries suffered during a vehicular chase. Such cases have arisen in other jurisdictions and the decisions are fairly split on the issue of whether gunshot injuries associated with a vehicular chase arise out of the use of the gunman's vehicle.[6] In other types of assaults with guns and objects, however, the weight of authority is that the resulting injuries do not arise out of the use of the wrongdoer's vehicle. For example, it has been held that where two motorists have come to a stop and one gets out of his car and shoots the other, the shooting injury does not arise out of the use of the gunman's car.[7] The shooting of a pedestrian by an assailant in a parked car has also been held not to arise out of the use of the car.[8] Courts have also held that an injury caused by an object thrown from a moving car, such as a bottle,[9] a stone,[10] a firecracker[11] or a cherry bomb,[12] does not arise out of the use of the vehicle from which it is thrown unless the vehicle's speed contributed to the velocity of the object so as to increase the seriousness of the injury[13] or unless the injury came not from the object itself but from a collision precipitated by the assault.[14] Other cases have held that a criminal assault is not the type of conduct that is associated with the normal use of a motor vehicle.[15]

**6.** Cases holding that a gunshot injury during a vehicular chase does not arise out of the use of the gunman's vehicle include *Coleman v. Sanford,* 521 So.2d 876 (Miss.1988); *Curtis v. Birch,* 114 Ill.App.3d 127, 69 Ill.Dec. 873, 448 N.E.2d 591 (1983); *Florida Farm Bureau Ins. Co. v. Shaffer,* 391 So.2d 216 (Fla.App. 4th Dist.1980); *Nationwide Mutual Ins. Co. v. Knight,* 34 N.C. App. 96, 237 S.E.2d 341 (1977), *cert. den.,* 293 N.C. 589, 239 S.E.2d 263 (1977); and *Ford v. Monroe,* 559 S.W.2d 759 (Mo.App.1977). Cases reaching the opposite conclusion include *Nationwide v. Munoz,* 199 Cal.App.3d 1076, 245 Cal.Rptr. 324, *review den'd but orig. op. ordered not officially published* (1988); *Continental Western Ins. Co. v. Klug,* 415 N.W.2d 876 (Minn. 1987); *Ganiron v. Hawaii Ins. Guaranty Association,* 69 Haw. 432, 744 P.2d 1210 (1987); and *Fortune Ins. Co. v. Ferreiro,* 458 So.2d 834 (Fla. App. 3d Dist.1984).

**7.** *Nationwide Mutual Ins. Co. v. Brown,* 779 F.2d 984 (4th Cir.1985); *Roberts v. Grisham,* 487 So.2d 836 (Miss.1986); *Rustin v. State Farm,* 254 Ga. 494, 330 S.E.2d 356 (1985); *Kish v. Central National Ins. Group of Omaha,* 67 Ohio St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288 (1981); *Detroit Automobile Inter–Insurance Exchange v. Higginbotham,* 95 Mich.App. 213, 290 N.W.2d 414 (1980).

**8.** *Wall v. Nationwide Mutual Insurance Co.,* 62 N.C.App. 127, 302 S.E.2d 302 (1983).

**9.** *Government Employees Ins. Co. v. Melton,* 357 F.Supp. 416 (D.S.C.1972); *Aetna Casualty and Surety Co. v. Head,* 240 So.2d 280 (Miss.1970).

**10.** *Mazon v. Farmers Ins. Exchange,* 107 Ariz. 601, 491 P.2d 455 (banc 1971), vacating opinion reported in 13 Ariz.App. 298, 475 P.2d 957 (1970).

**11.** *Farm Bureau Mutual Ins. Co., Inc. v. Evans,* 7 Kan.App.2d 60, 637 P.2d 491 (1981); *Speziale v. Kohnke,* 194 So.2d 485 (La.App.1967); *Richland Knox Mutual Ins. Co. v. Kallen,* 376 F.2d 360 (6th Cir.1967).

**12.** *McDonald v. Great American Ins. Co.,* 224 F.Supp. 369 (D.R.I.1963).

**13.** *National American Ins. Co. v. Insurance Company of North America,* 140 Cal.Rptr. 828, 74 Cal.App.3d 565 (1977) (egg thrown at pedestrian); *Valdes v. Smalley,* 303 So.2d 342 (Fla.App. 3d Dist.1974), cert. den., 341 So.2d 975 (Fla. 1977) (beer mug thrown from moving car, killing pedestrian).

**14.** *Frazier v. Unsatisfied Claim and Judgment Fund Board,* 262 Md. 115, 277 A.2d 57 (1971) (firecracker caused plaintiff to wreck); *Insurance Company of North America v. Dorris,* 161 Ga.App. 46, 288 S.E.2d 856 (1982) (firing gun at truck caused truck to overturn and injure passengers).

**15.** *Currera v. Loyd,* 531 So.2d 544 (La.App. 5 Cir.1988) (kidnapping, rape and murder of child passenger); *Washington v. Hartford Accident & Indemnity Company,* 161 Ga.App. 431, 288 S.E.2d 343 (1982) (intentional shooting of school bus passenger by another passenger); *Farm Bureau Mutual Ins. Co. v. Crum & Forster Ins. Co.,* 618 F.2d 39 (8th Cir.1980) (accidental shooting of passenger by another passenger); *Love v. Farmers Ins. Group,* 121 Ariz. 71, 588 P.2d 364 (Ct.App.1978) (abduction and death of insured in his car); *General Accident Fire and Life Assurance Corp. Ltd. v. Appleton,* 355 So.2d 1261 (Fla. 4th D.C.A.1978) (attack of passenger); *Norgaard v. Nodak Mutual Ins. Co.,* 201 N.W.2d 871 (N.D.1972) (accidental shooting of passen-

There are various South Carolina cases construing the phrase "arising out of the use" as it applies to motor vehicles. Some cases treat the issue of whether an individual was using an insured vehicle at the time of his injury in the context of uninsured motorist coverage. For example, in *Hite v. Hartford Accident and Indemnity Co.*, 288 S.C. 616, 344 S.E.2d 173 (Ct.App. 1986), a man who got out of his employer's vehicle, walked fifty feet across a parking lot and was struck by an uninsured vehicle was not using his employer's vehicle for the purpose of coverage. In *Federated Mutual Implement & Hardware Insurance Company v. Gupton*, 241 F.Supp. 509 (E.D.S.C.1965), *aff'd* 357 F.2d 155 (4th Cir. 1966), a gas station employee who took his employer's pickup truck to help a stranded motorist on the highway was injured when the motorist, who was uninsured, backed up, pinning him between her car and the pickup truck as he put gas in her car. The court held his injury arose out of the use of the pickup truck. The State Supreme Court has also held that jumpstarting an airplane with a car was not a use of the car within the meaning of an automobile liability policy where the damage resulted from the airplane's movement after being recharged.[16] In other cases, injuries suffered as the result of getting people and things into and out of cars have been considered to have arisen out of the use of the vehicle.[17]

This action arises out of the Court's diversity jurisdiction, 28 U.S.C. 1332, and South Carolina law applies. This Court's duty as to a question of substantive law the South Carolina courts have not yet ruled on is to foretell the South Carolina Supreme Court's decision if presented with the same question. *Patel by Patel v. McIntyre*, 667 F.Supp. 1131 (D.S.C.1987), *aff'd* 848 F.2d 185 (4th Cir.1988). Howser urges that *Chapman v. Allstate*, 263 S.C.

565, 211 S.E.2d 876 (1975), supports her position that a criminal assault can arise out of the use of the assailant's vehicle. In *Chapman* the plaintiff passenger was injured when she was either thrown or fell from a moving vehicle. Howser asserts *Chapman* involved a criminal assault but in fact the circumstances of the plaintiff's fall were in dispute. 211 S.E.2d at 878. The holding in *Chapman* that the injuries arose out of the use of the vehicle is based not on the assertion that the fall resulted from an assault but on the fact that the uninsured motorist's moving vehicle was used to injure the plaintiff while she was a passenger in the vehicle. *Id.* 211 S.E.2d at 879.

Howser urges the Court to adopt the reasoning of *Ganiron v. Hawaii Insurance Guaranty Association*, 69 Haw. 432, 744 P.2d 1210 (1987), and *Fortune Ins. Co. v. Ferreiro*, 458 So.2d 834 (Fla.App.1984), both of which decisions conclude that, because injuries from an intentional ramming of one car with another is covered under an uninsured motorist provision, an intentional shooting by an uninsured motorist should also be covered. This Court concludes that the South Carolina Supreme Court would disagree with these decisions because of the difference in the "use" of the car; that is, ramming a car with another is using the car as an instrumentality for causing the injury while firing a gun from a car is not.

Although conceding that a car is not designed as a place from which to fire a gun, Howser nevertheless argues that the use of the car was necessary for the gunman to chase her and put himself in a position to shoot her. Howser relies on two cases for this proposition. In *Nationwide v. Munoz*, 199 Cal.App.3d 1076, 245 Cal.Rptr. 324, *review den'd but orig. op. ordered not officially published* (1988), two individuals chased two others by car.

---

ger when insured got out of car and used car roof as a gun rest to shoot birds).

**16.** *Plaxco v. U.S. Fidelity & Guaranty Co.*, 252 S.C. 437, 166 S.E.2d 799 (1969).

**17.** In *Wrenn & Outlaw, Inc. v. Employers' Liability Assurance Corp.*, 246 S.C. 97, 142 S.E.2d 741

(1965), a grocery bag boy was "using" an automobile when he negligently closed the car door on the owner's hand. In *Coletrain v. Coletrain*, 238 S.C. 555, 121 S.E.2d 89 (1961), a taxi passenger was "using" the taxi when he negligently closed the door on his wife's hand.

The passenger in one car shot and killed the passenger in the other car. The court found coverage because the car in which the gunman was riding was a substantial factor in the shooting death: it was used for the chase, as a platform for shooting and as the means to make a getaway. In *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn.1987), an uninsured motorist known to the victim shot him and rammed his car during a two-mile chase. The court found the uninsured vehicle was an "active accessory" to the assault and the gunman's actions of driving and shooting were inextricably linked.

This Court concludes that South Carolina courts would be unpersuaded by the reasoning of *Munoz* and *Klug*. *Munoz* draws on California decisions which interpret the phrase "arising out of the use" as having "a broad and comprehensive application, [affording] coverage for injuries bearing almost any causal connection with the vehicle." 245 Cal.Rptr. at 325. This Court concludes the South Carolina Supreme Court would instead continue the trend of the following decisions which, applying South Carolina law, give the phrase a narrower construction.[18]

In *Government Employees Ins. Co. v. Melton*, 357 F.Supp. 416 (D.S.C.1972), the court held that an injury resulting from a bottle thrown from a pickup truck did not arise out of the use of the truck for the purpose of liability coverage. Relying on the insurance treatise, *Appleman, Insurance Law and Practice*,[19] the court identified three elements for determining "use":

1. The accident must have arisen out of the inherent nature of the automobile as such.

2. The accident must have arisen within the natural territorial limits of the automobile, and the actual use, loading, or unloading, must not have terminated.

3. The automobile must not merely contribute to the cause of the condition, but must itself produce the injury. *Melton*, 357 F.Supp. at 418. The court concluded that a vehicle is not designed to permit or encourage the throwing of objects and the use of the vehicle was not the cause of the injury. *Id.* at 419.

In *Nationwide Mutual Ins. Co. v. Brown*, 779 F.2d 984 (4th Cir.1985), a passenger in a truck caused it to collide with a car driven by his estranged wife. When the vehicles came to a stop, the passenger got out of the truck, walked to his wife's car and shot her. The court held the use of the truck to transport the gunman to the scene of the shooting did not constitute a "use" of the truck for the purposes of liability or uninsured motorist coverage. The *Brown* court quoted with approval the following language from *Detroit Automobile Inter–Insurance Exchange v. Higginbotham*, 95 Mich.App. 213, 290 N.W.2d 414, 419 (1980):

"Cases construing the phrase 'arising out of the ... use of a motor vehicle' uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury. (Citation omitted). Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle. (Citations omitted).

Applying this requirement to the present case leads to the conclusion that appellant's injuries did not arise out of

---

**18.** Howser urges the Court to distinguish South Carolina cases interpreting the "use" language as it applies to liability coverage. In the case of liability coverage, she claims, the court must consider whether an insured, intentionally inflicting bodily harm with a gun, is entitled to indemnity; in the case of uninsured motorist coverage, on the other hand, "use" should be given a broader interpretation because the insured is an innocent victim who has been injured by a financially irresponsible or unknown motorist. South Carolina cases construing the term "use" do not make such a distinction. The

requirement that the injuries suffered must "aris[e] out of the ownership, maintenance, or use of" the vehicle applies to both types of coverage and this Court finds no reason to make a distinction.

**19.** The decision cites 7 *Appleman, Insurance Law and Practice*, § 4317, page 146. A similar statement appears in the current volume, 6B *Appleman, Insurance Law and Practice* (Buckley ed. 1979), § 4317, pp. 367–369.

Mr. Higginbotham's use of his motor vehicle. An assault by an armed assailant upon the driver of a car is not the type of conduct that is foreseeably identifiable with the *normal* use of a motor vehicle. (Citations omitted)."

*Brown*, 779 F.2d at 989 (emphasis original). The court concluded that South Carolina courts would use a comparable rationale and find no coverage because the use of the truck was merely incidental, remote from the reasonably foreseeable, normal use of the vehicle and not the causative factor of the death. *Id.*

Applying the *Melton* and *Brown* analyses, the Court concludes that Howser's injuries did not arise out of the use of the gunman's automobile as an automobile and that the gunman's vehicle, although it helped him to pursue Howser, did not itself produce her injuries. While the use of the gunman's car contributed to Howser's injury, a shooting injury is not foreseeably identifiable with the normal use of a vehicle. *Brown*, 779 F.2d at 989. Accordingly, the Court concludes Howser has failed to establish that her injury "ar[ose] out of the ownership, maintenance, or use of" the gunman's vehicle as required by section 38–77–140.

### B.

As an additional ground for its decision, the Court concludes Howser has failed to establish that the gunman's vehicle caused her injury as required by section 38–77–170. Although the Court has found no South Carolina decision addressing causation as a requirement separate from the requirement that the injury "arise out of the ownership, maintenance or use" of the vehicle, the language of section 38–77–170 is different from that of section 38–77–140 and the two sections, in this Court's view, constitute two distinct conditions for uninsured motorist coverage. Furthermore, South Carolina decisions may have inferentially reached the same conclusion. *Melton* and *Brown* both contain causation language. *Brown*, 779 F.2d at 988–989; *Melton*, 357 F.Supp. at 418–419. Both cases rely on *Plaxco*[20] and conclude that an assault, rather than a vehicle, caused the injury. *Brown*, 779 F.2d at 989; *Melton*, 357 F.Supp. at 419.[21] The Court concludes that Howser's injuries were caused by the gunshot, not by the gunman's vehicle.

Accordingly, the Court declares that the uninsured motorist provision in the policy Wausau issued to Howser's father does not afford coverage here. Although the incidence of violence among strangers in our society is tragically high and apparently increasing, South Carolina case law as well as South Carolina's uninsured motorist statutes do not yet support the conclusion that uninsured motorist coverage is intended to extend to the act of violence that unfortunately befell Nancy Howser. The Court is aware of the tragedy she and her family have suffered and continue to suffer and it extends its sympathy to them as the victims of a lawbreaker. But it cannot conclude that the uninsured motorist provision of the insurance policy was intended to, or does, require Wausau to pay for the damages caused by that lawbreaker. The Court therefore directs that judgment be entered for the plaintiff.

IT IS SO ORDERED.

---

**20.** "The 'accident' upon which insurance coverage is claimed must bear a 'causal relation or connection' with the ownership, maintenance or use of the automobile." *Plaxco*, 166 S.E.2d at 800.

**21.** Decisions from other jurisdictions have found an independent or intervening assault as the cause of the injury suffered. *See, e.g., Roberts v. Grisham*, 487 So.2d 836, 839 (Miss.1986) ("the shooting ... was an intervening cause, which broke the use sequence of the automobile and death"); *Rustin v. State Farm*, 254 Ga. 494, 330 S.E.2d 356, 358 (1985) ("death resulted from the employment of the pistol"); *Nationwide Mut. Ins. Co. v. Knight*, 34 N.C.App. 96, 237 S.E.2d 341 (1977) (rejecting contention that causal relationship was established simply by showing accident would not have happened "but for" use of automobile).