847 P.2d 111

· **Angela RUIZ, Plaintiff–Appellant,**

v.

**FARMERS INSURANCE COMPANY OF ARIZONA, an Arizona corporation; Farmers Insurance Group; Continental Casualty Company; CNA Group, Defendants–Appellees.**

No. 1 CA–CV 91–0255.

Court of Appeals of Arizona, Division 1, Department D.

Sept. 8, 1992.

Review Granted on Issue Presented for Review March 16, 1993.

Solomon, Relihan & Blake, P.C. by H. Micheal Wright, Mesa, for appellant.

Broening Oberg & Woods by James R. Broening and Neal B. Thomas, Phoenix, for appellee Farmers Ins. Co.

Gallagher & Kennedy, P.A. by E. Calvin Fuchs and Kevin O'Malley, Phoenix, for appellee Continental Cas. Co.

## OPINION

EHRLICH, Judge.

Angela Ruiz ("Ruiz") appeals from the grant of summary judgment determining that Farmers Insurance Company of Arizona and Continental Casualty Company ("insurance companies") were not liable for her injuries. For the following reasons, we reverse the judgment and remand the case to the trial court.

### A. FACTS AND PROCEDURAL HISTORY

On June 2, 1989, Ruiz was a passenger in a car owned by William Ihrig.[1] A Dodge vehicle approached Ihrig's car from the rear as both vehicles were traveling along a Phoenix street; the driver of the Dodge began to pursue Ihrig's car. One of the passengers in the Dodge fired several shotgun blasts at the Ihrig car. The driver of the Dodge then maneuvered his vehicle alongside Ihrig's car and the gunman/passenger fired a shotgun blast into the window of Ihrig's car. The blast struck Ruiz on the side of her head.

The Dodge was uninsured at the time of the shooting. Ruiz was insured under a motor vehicle insurance policy issued by Farmers Insurance Company to Ihrig because she was a passenger in his vehicle. Ruiz also was an insured under a motor vehicle insurance policy issued by Continental Casualty Company to her parents, which provided excess coverage over the primary coverage of the Farmers policy. Both of the policies had uninsured motorist coverage, providing payment for bodily injuries caused by uninsured motorists arising out of the "ownership, maintenance or use" of the uninsured motor vehicle.

Ruiz sought a determination that she is entitled to coverage for uninsured motorist benefits under both insurance policies. The insurance companies moved for summary judgment on the basis that, as a matter of law, Ruiz' injuries did not arise out of the ownership, maintenance or use of an uninsured vehicle. Farmers additionally argued that uninsured motorist benefits are not available for injuries arising out of intentional acts. The trial court granted summary judgment for the insurance companies and Ruiz timely appealed.

### B. ISSUE OF INJURY ARISING OUT OF THE OPERATION, MAINTENANCE OR USE OF VEHICLE

The first issue on appeal is whether an injury arises out of the operation, maintenance or use of an uninsured vehicle when the vehicle itself is not the proximate cause of the injury, but the injury would not have taken place without the use of the vehicle in the incident. Ruiz argues that Arizona should follow the "trend" of finding uninsured motorist coverage in such situations. The insurance companies respond that, under both Arizona law and the law of other jurisdictions, insurance liability has been rejected in cases when there is merely a slight causal connection between the injury and the vehicle.

No Arizona case is dispositive. However, Arizona courts on several occasions have considered the general issue of when an injury arises out of the ownership, maintenance or use of a vehicle: *Mazon v. Farmers Insurance Exchange*, 107 Ariz. 601, 491 P.2d 455 (1971); *Morari v. Atlantic Mutual Fire Insurance Co.*, 105 Ariz. 537, 468 P.2d 564 (1970); *Love v. Farmers Insurance Group*, 121 Ariz. 71, 588 P.2d 364 (App.1978); *Vanguard Insurance Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972); *Brenner v. Aetna Insurance Co.*, 8 Ariz.App. 272, 445 P.2d 474 (1968).

The court in *Brenner* specifically addressed the type of relationship that must exist for an injury to arise out of the ownership, maintenance or use of a vehicle. 8 Ariz.App. at 275–76, 445 P.2d at 477–78. In that case, a gun being handled by one

---

1. In reviewing a summary judgment, we view the facts in the light most favorable to the party against whom judgment was entered. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985); *Zuck v. State*, 159 Ariz. 37, 39, 764 P.2d 772, 774 (App.

1988). The interpretation of the insurance contract is a question of law decided by this court independently of the conclusions of the trial court. *Thomas v. Liberty Mutual Insurance Co.*, 173 Ariz. 322, 325, 842 P.2d 1335, 1337 (App. 1992).

passenger in a vehicle accidentally discharged and injured another passenger. The gun was not in contact with any part of the vehicle and no motion of the vehicle caused the gun to fire. The court observed that the phrase "arising out of" "imports a concept of causation" and quoted the following language from "a pertinent annotation":

> "All the cases agree that a causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the clause 'arising out of the ownership, maintenance, or use' of a vehicle, and where such causal connection or relation is absent coverage will be denied." ["Automobile liability insurance,"] 89 A.L.R.2d [150,] 153 [ (1963) ].

*Id.* at 275, 445 P.2d at 477.

In finding that there was no causal connection between the injury and the vehicle, the court emphasized that the injury could have occurred anywhere and that it was solely the result of the use of the gun, not the use of the car. *Id.* at 277, 445 P.2d at 479. However, the court recognized that, based upon the facts of a case such as *McDonald v. Great American Insurance Co.*, 224 F.Supp. 369 (D.R.I.1963), "[a court] might possibly look upon the throwing of a lighted explosive from a moving car into the vicinity of others as an act in some way connected with the use of the car." *Brenner*, 8 Ariz.App. at 277, 445 P.2d at 479.

In *Morari*, the owner of a truck was driving along a road, hunting with friends, when a deer was seen. The driver stopped the truck, stepped outside and reached behind the seat to get his gun. The moment he picked up the gun, it discharged, injuring the leg of a companion. The court distinguished *Brenner*, saying:

> We think it obvious that [in *Brenner*] there was no connection between the toying with the gun, the negligent act, and the use of the motor vehicle. That is not the case here. The rifle was part of the cargo of [the driver's] truck. The truck was being used for hunting and the transportation of the hunters and their rifles. The carriage of the rifles was part of the use of the truck in hunting.

*Id.* 105 Ariz. at 540, 468 P.2d at 567.

The supreme court later applied the causality standard of *Brenner* to an injury occurring while two vehicles were traveling along the road. In *Mazon*, a person was injured while driving his vehicle when a stone thrown by a person in an unidentified car struck him in the eye. In concluding that the injury was not covered by insurance on the vehicle, the court stated that, "we can find no causal relationship between an injury resulting from a stone thrown by an unknown person from an unidentifiable vehicle, and the ownership, maintenance or use of that vehicle." 107 Ariz. at 603, 491 P.2d at 457.

Emphasizing the causal nexus which the courts in *Brenner* and *Mazon* found necessary to establish whether an injury arose out of the use of a vehicle, the court in *Cantrell* considered insurance liability when a gunman drives up to a drive-in window, demands money from the person working at the store and then shoots the person as he drives away. The court found that the injury did not arise out of the operation, maintenance or use of the vehicle because the vehicle merely was the situs of the incident. 18 Ariz.App. at 488, 503 P.2d at 964.

Based upon similar logic, the court in *Love* found that a murder did not arise out of the operation, maintenance or use of a vehicle when the murder occurred after two assailants abducted the car's owner and then beat him to death with a candelabrum which was inside the car. The court reasoned that the only connection between the car and the death was that while the car was the situs of the incident, "[t]he attack could have occurred outside the car as easily as inside the car." 121 Ariz. at 74, 588 P.2d at 367.

While the Arizona cases provide that there must be some degree of causal connection between the injury and the ownership, maintenance or use of the vehicle in order to establish insurance coverage, there has been no clear demarcation of that

line. Certainly none of these cases involved as particular a use of the vehicle as in the present situation. Accordingly, we examine what courts in other jurisdictions have said upon considering situations virtually identical to the one before us and find that they have reached differing conclusions with regard to insurance liability.

In *Continental Western Insurance Co. v. Klug,* 415 N.W.2d 876, 878 (Minn.1987), the supreme court employed a three-step analysis in concluding that a gunshot injury during a vehicular chase arose out of the gunman's use of the vehicle. The court's first consideration was the extent of causation between the automobile and the injury; the vehicle must be an "active accessory" in causing the injury, constituting " 'something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury.' " *Id.* (quoting *Tlougan v. Auto–Owners Insurance Co.,* 310 N.W.2d 116, 117 (Minn.1981)). The second factor weighed by the court was whether an act of independent significance had occurred, thereby breaking the causal link between the "use" of the vehicle and the injuries inflicted. *Id.* The third component the court analyzed was the type of vehicle use involved, stating that "coverage should exist only for injuries resulting from use of an automobile for transportation purposes." *Id.*

The court in *Klug* found each of the three factors to be present and therefore concluded that the injury arose out of the use of the gunman's vehicle. *Id.* at 878–79. In finding the requisite degree of causation, the court observed that the gunman's "car was an 'active accessory' to the assault" because the gunman had used his car to keep up with the victim for more than two miles in order to shoot the victim. *Id.* at 878. Regarding the lack of an event occurring to break the causal link, the court stated:

> [The gunman's] actions of driving and shooting were inextricably linked. Had [the gunman] used his vehicle to drive ahead of [the victim], left his vehicle, and shot [the victim] from the side of the road, we might have found an interven-

ing act. Under the circumstances of this case, however, we hold that the causal link between [the victim's] injuries and the use of the car was not broken.

*Id.* Finally, the court concluded that the gunman had been using his car for transportation, explaining that he had "used his car not only to maneuver himself into a position to harm [the victim] but also to maneuver [the victim] into a position from which [the victim] could be harmed." *Id.* at 878–79.

In *State Farm Mutual Automobile Insurance Co. v. Davis,* 937 F.2d 1415, 1422 (9th Cir.1991), upon similar facts involving a car chase and shooting, the court found that the accident arose out of the use of the gunman's vehicle. The court, persuaded that a California court would apply the same analysis used in *Klug,* stated:

> The same three considerations are present in this case. [The gunman's driver] had to chase [the victim] so that [the gunman] could shoot at him. [The gunman] did not leave the vehicle, but shot [the victim] while both were traveling down the highway. Finally, [the gunman's driver] had to drive the van into position next to the [victim's car], giving [the gunman] the opportunity to fire his gun. The presence of these factors supports our conclusion that the vehicle was more than incidental to this shooting.

*Id.* at 1421.

Other jurisdictions, however, require that a vehicle be the proximate cause of an injury in order to find insurance coverage for an incident. In *Government Employees Insurance Co. v. Melton,* 357 F.Supp. 416, 417 (D.S.C.1972), *aff'd without opinion,* 473 F.2d 909 (4th Cir.1973), persons were injured by a bottle or bottles thrown from the bed of a pick-up truck; it is unclear whether the miscreants, the victims or both were traveling in a vehicle at the time of the incident. The court required that, in order for there to be insurance coverage, the injury must have arisen out of the "inherent nature" of the vehicle, within its body and during its actual use, and that the vehicle itself must have pro-

duced the injury. *Id.* at 418 (citing 7 *Appleman Insurance Law and Practice*, § 4317 at p. 146). It then found that there was no proximate cause because the vehicle was not being "used for the purpose for which it was designed" and, as the victims admitted, "it was the throwing of the bottle and not the manner of operation of the vehicle that caused the injury." *Id.* at 419 n. 3. The court added, however, that the decision might have been different had "the facts revealed any actionable negligence on the part of the driver" of the insured vehicle. *Id.* at 419.

In *Wausau Underwriters Insurance Co. v. Howser*, 727 F.Supp. 999, 1000 (D.S.C. 1990), a gunman pulled alongside his victim's moving vehicle and shot and injured the driver. The court first noted that to establish insurance liability under South Carolina statutes, the injured person had to show both that the injury arose out of the ownership, maintenance or use of the vehicle and that the vehicle was the proximate cause of the injury. *Id.* at 1002; *see* S.C.Code Annot. §§ 38–77–140, 38–77–170. It rejected the interpretation of the phrase "arising out of the use" enunciated in *Klug,* instead giving the phrase the narrower construction of *Melton,* and concluded that the victim's injuries did not arise out of the use of the vehicle because, although the assailant was able to pursue the victim only because he had a vehicle, it was not the vehicle itself which had produced the injuries. 727 F.Supp. at 1005–06. In addition, the court determined that the proximate cause requirement was not met because "[the victim's] injuries were caused by the gunshot, not by the gunman's vehicle." *Id.*

The case of *Kessler v. Amica Mutual Insurance Co.,* 573 So.2d 476 (La.1991), is another one in which a court held that proximate cause between the injury and the vehicle was necessary for insurance coverage. It concluded that the shooting of one motorist by another was not an accident arising out of the use of the vehicle, stating that the "only interpretation of 'use' which would result in a finding that the conduct in this case was use of the vehicle is a holding that 'use' may be interpreted to mean 'while using.'" *Id.* at 479. The court found that such an interpretation was "beyond the contemplation of the parties to the contract and would not comport with" "common-sense." *Id.*

The conduct which was the legal cause of the plaintiff's injury was the unidentified motorist shooting a gun toward the plaintiff. A common-sense analysis reveals that this conduct was not a use of the vehicle despite the fact that the unidentified motorist may have been using the vehicle at the time. The duty that the unidentified motorist breached existed independently of his use of the automobile. The fact that he was in his vehicle at the time of the shooting was incidental to the breach of his duty not to shoot at the plaintiff. This breach did not require the use of the vehicle nor did it involve the use of the vehicle.

*Id.*

We are unpersuaded by the reasoning in *Melton, Howser* and *Kessler* and do not find that the parties in this case intended to construe the term "use" as narrowly as those courts. In determining the parties' intent, we rely upon the plain meaning of the terms of the insurance policy, as viewed in the context of the contract as a whole. *United California Bank v. Prudential Insurance Co., Etc.,* 140 Ariz. 238, 259, 681 P.2d 390, 411 (App.1983).

The Farmers' policy states that it "will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle." (Emphasis omitted.) Similarly, the Continental policy provides that the "owner's or operator's liability for [uninsured motorist coverage] damages must arise out of the ownership, maintenance or use of an uninsured ... motor vehicle...." Neither policy defines the term "use" nor specifies limits regarding what constitutes the use of a vehicle.

█ Absent a specific provision, we will apply the ordinary meaning of the insur-

ance language in interpreting the policies. *Brady v. Black Mountain Inv. Co.,* 105 Ariz. 87, 89, 459 P.2d 712, 714 (1969). One definition of the term "use" is "the act of using or the state of being used." *Webster's New Universal Unabridged Dictionary* (2d ed. 1983). Contrary to the court in *Kessler,* we find that interpreting the term "use" as "while using" is neither contrary to the intent of the policies nor without basis in reason and thus contrary to common sense.

■ In addition, Arizona law, unlike that of South Carolina, does not require that the vehicle itself be the proximate cause of the injury. To the contrary, in *Morari,* the court stated that "while it is often said that there must be a causal relationship between the accident and the motor vehicle, ... the word 'causal' is not to be confused with proximate causation." 105 Ariz. at 538–39, 468 P.2d at 565–66. This is in accord with *Brenner* in which it was said that a person need only establish that a causal relation or connection exists between the injury and the use of a vehicle in order for the injury to fall within the insurance coverage. 8 Ariz.App. at 275, 445 P.2d at 477.

We find the analysis of *Klug,* 415 N.W.2d at 878, helpful in determining whether a causal connection exists between Ruiz' injuries and the use of the gunman's vehicle. Similar to the situations in *Klug* and *Davis,* the gunman's vehicle was an "active accessory" to the incident as the gunman's driver used the vehicle to pursue Ihrig's vehicle and to maintain its position next to that vehicle as the gunman shot Ruiz. This is not a situation as in *Cantrell* and *Love,* in which the vehicle merely was the situs of the incident, or as in *Brenner,* in which case the car had no effect on the discharge of the gun. In fact, the court in *Brenner* recognized that the existence of a causal connection between a vehicle and an injury was dependent upon the specific facts of the case, acknowledging that other

scenarios, such as when an explosive is thrown from a moving car, may constitute the use of the vehicle. 8 Ariz.App. at 277, 445 P.2d at 479.[2] Although the court in *Mazon* found no causal connection when a driver threw a stone at another vehicle, unlike the present case, there was no evidence in *Mazon* that the driver used his vehicle in a manner which allowed him to attack the other vehicle.

As to the second prong of the analysis, no significant factors intervened during the course of the gunman pursuing and shooting Ruiz. The present facts are distinct from situations such as in *Love* in which the vehicle was used merely to transport the parties to a certain destination and, once there, became nothing more than the situs of the incident.

Finally, under this analysis, the vehicle must have been used for a transportation purpose. As was true in *Klug* and *Davis,* the vehicle here was operated because the gunman's driver used it to pursue and then maintain position next to Ihrig's vehicle.

Based upon the foregoing analysis, we reverse the summary judgment in favor of the insurance companies on this issue.

## C. ISSUE OF INTENTIONAL TORT COVERAGE

A second issue advanced by Farmers is whether "intentional" acts causing injury are compensable under Arizona's Uninsured Motorist Act, Ariz.Rev.Stat. section ("A.R.S. §") 20–259.01. The record is not sufficient for us to address this issue. Therefore, we decline to do so. *E.g., Phoenix Metals Corp. v. Roth,* 79 Ariz. 106, 112, 284 P.2d 645, 649 (1955).

## D. ISSUE OF ATTORNEYS' FEES

■ Ruiz has requested attorneys' fees on appeal pursuant to A.R.S. § 12–341.01. We find that an award of attorneys' fees is justified under the criteria set forth in *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 394, 710 P.2d 1025,

---

**2.** Ironically, the court in *Brenner* wrote that, had the facts in its case been such as existed in *McDonald,* 224 F.Supp. 369, it might have found there to be insurance coverage, but the court in

*McDonald* itself, as quoted in *Melton,* analyzed the case in terms of proximate cause. 357 F.Supp. at 419.

**72**

1049 (1985) (supp. op.). The amount of the award will be determined upon Ruiz' compliance with Arizona Rule of Civil Appellate Procedure 21(c).

*E. CONCLUSION*

The judgment is reversed and the case is remanded to the trial court for proceedings consistent with this opinion.

TAYLOR, P.J., and GERBER, J., concur.