865 P.2d 762

**Angela RUIZ, Plaintiff–Appellant,**

v.

**FARMERS INSURANCE COMPANY of ARIZONA, an Arizona corporation; Farmers Insurance Group; Continental Casualty Company; CNA Group, Defendants–Appellees.**

No. CV–92–0427–PR.

Supreme Court of Arizona.

Dec. 21, 1993.

Reconsideration Denied Feb. 16, 1994.

Solomon, Relihan & Blake, P.C. by H. Michael Wright and Mark R. Siegel, Phoenix, for plaintiff-appellant.

Broening, Oberg & Woods by James R. Broening and Neal B. Thomas, Phoenix, for Farmers Ins. Co.

Gallagher & Kennedy, P.A. by E. Calvin Fuchs and Kevin E. O'Malley, Phoenix, for Continental Cas. Co.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

Farmers Insurance Company of Arizona ("Farmers") and Continental Casualty Company ("Continental") ask this court to review a court of appeals' opinion holding that injuries suffered during a car-to-car shooting "arose out of the use" of an uninsured motor vehicle. *Ruiz v. Farmers Ins. Co.*, 174 Ariz. 66, 847 P.2d 111 (App.1992). The trial court granted summary judgment in favor of the defendants, Farmers and Continental, but the court of appeals reversed. 174 Ariz. at 71, 847 P.2d at 116. Because we hold that the plaintiff's injuries did not "arise out of the ownership, maintenance or use" of an uninsured vehicle, we affirm the trial court's judgment and vacate the court of appeals' opinion. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

### FACTS AND PROCEDURAL HISTORY

On June 2, 1989, Angela Ruiz ("Ruiz") was a passenger in a vehicle owned by William Ihrig ("Ihrig") and operated by Paul Garcia. A Dodge vehicle, traveling along the same Phoenix street, pursued Ihrig's car and maneuvered alongside it. A passenger in the Dodge fired several shotgun blasts into Ihrig's car, injuring Ruiz.

The Dodge was uninsured at the time of the shooting. Ruiz was an insured under two policies providing uninsured motorist coverage:[1] one issued to Ihrig by Farmers and

---

1. Such coverage was required by A.R.S. § 20–259.01(A) prior to its amendment effective December 28, 1993:

No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or

another issued to Ruiz' parents by Continental. The Farmers policy provided uninsured motorist coverage as follows:

> [Farmers] will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle. *The bodily injury must* be caused by accident and *arise out of the ownership, maintenance or use* of the uninsured motor vehicle.

(Emphasis added.) The Continental policy contained similar language.

In the trial court, Ruiz sought a declaratory judgment that she was entitled to uninsured motorist coverage under both policies. The insurers moved for summary judgment, arguing that, as a matter of law, the incident did not "arise out of the ownership, maintenance or use" of the uninsured Dodge vehicle. The trial court agreed and granted summary judgment in favor of Farmers and Continental.

The court of appeals reversed. *Ruiz*, 174 Ariz. at 71, 847 P.2d at 116. Finding no Arizona case dispositive, the court looked to other jurisdictions for guidance. The court found the analysis of *Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn.1987) particularly persuasive. Using the three-step analysis set out in *Klug*, the court held there was a sufficient causal connection between Ruiz' injuries and use of the Dodge vehicle. Specifically, the court held Ruiz' injuries arose out of the use of the Dodge because the vehicle was used to pursue Ihrig's car and maneuver the gunman into position. We granted defendants' joint petition for review.

## ISSUE

Whether an injury sustained as the result of a shotgun blast fired from an uninsured motor vehicle is bodily injury that "arises out of the use" of the uninsured motor vehicle

death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery ... unless coverage is provided in the policy

within the meaning of the policy language or A.R.S. § 20–259.01(A).

## DISCUSSION

On several occasions Arizona courts have considered the general issue of when an injury arises out of the ownership, maintenance or use of a vehicle. *Mazon v. Farmers Ins. Exch.*, 107 Ariz. 601, 491 P.2d 455 (1971); *Morari v. Atlantic Mut. Fire Ins. Co.*, 105 Ariz. 537, 468 P.2d 564 (1970); *Love v. Farmers Ins. Group*, 121 Ariz. 71, 588 P.2d 364 (App.1978); *Vanguard Ins. Co. v. Cantrell*, 18 Ariz.App. 486, 503 P.2d 962 (1972); *Brenner v. Aetna Ins. Co.*, 8 Ariz.App. 272, 445 P.2d 474 (1968). These cases all provide that there must be a causal relationship between an injury and the ownership, maintenance or use of a motor vehicle. *See, e.g., Love*, 121 Ariz. at 74, 588 P.2d at 367; *Brenner*, 8 Ariz.App. at 276, 445 P.2d at 478. An analysis of these cases supports a holding that there is an insufficient causal nexus between Ruiz' injuries and the use of the uninsured vehicle.

Most analogous to the fact pattern here is *Mazon*. 107 Ariz. 601, 491 P.2d 455. In *Mazon*, a driver was injured when a stone, thrown from another vehicle, struck him in the eye. In holding there was no uninsured motorist coverage, we held there was "*no causal relationship between an injury resulting from a stone thrown by an unknown person from an unidentifiable vehicle, and the ownership, maintenance or use of that vehicle.*" *Mazon*, 107 Ariz. at 603, 491 P.2d at 457 (emphasis added). So, too, should the analysis be when the injury is caused by a shotgun pellet. We see no distinguishable difference between a hurled rock and a fired shotgun pellet.

Ruiz urges us to distinguish *Mazon* because of the greater involvement of the present assailant's vehicle (i.e. by pursuing and maneuvering) and the driver's apparent awareness of the impending assault. Whether similar facts existed in *Mazon* is immate-

... for the protection of persons insured who are legally entitled to recover damages from owners or operators of uninsured motor vehi-

rial to the analysis.[2] In *Mazon*, there was no coverage because the injury was caused by the stone; here there is no coverage because the injury was caused by the shotgun pellets. What injured Ruiz was how the shotgun was used, not how the car was used. The use of the uninsured vehicle was incidental.

Other Arizona cases confronting the issue of when an injury arises out of the use of a vehicle are in accord. It is not enough that Ruiz was injured by someone "using" a motor vehicle. *Cantrell*, 18 Ariz.App. at 488, 503 P.2d at 964 (injuries suffered by drive-thru liquor attendant shot when customer fired at him from his car during robbery did not arise out of the use of the vehicle); *Brenner*, 8 Ariz.App. at 276, 445 P.2d at 479 (injuries suffered by passenger shot when gun held by another passenger accidently fired did not "arise out of the use" of the uninsured vehicle—car was mere situs of injury). Nor is it enough that Ruiz was injured while she herself was "using" a motor vehicle. *Love*, 121 Ariz. at 74, 588 P.2d at 367 (noting that the "attack could have occurred outside the car as easily as inside the car"). To recover, Ruiz needed to show that the uninsured vehicle caused and produced her injury, not that it merely facilitated her injury. She did not make this showing.

*Morari* is inapposite to these facts. In *Morari*, a passenger was injured on a hunting trip when a gun being unloaded from a vehicle accidently fired. We held the injury did arise out of the use of the vehicle. 105 Ariz. at 540, 468 P.2d at 567. We noted, however, that the insurance policy in *Morari* defined "use" as including "the loading and unloading thereof" and that the accident occurred while the vehicle was being unloaded. This is not a loading and unloading case; the analysis of *Morari*, therefore, does not apply to these facts.

The better reasoned cases from other jurisdictions support our analysis. *See, e.g., Taylor v. Phoenix Ins. Co.*, 622 So.2d 506, 509 (Fla.App.1993) (drive-by shooting was "an act unrelated to use of a motor vehicle"); *Kessler v. Amica Mut. Ins. Co.*, 573 So.2d 476, 479 (La.1991) ("A common-sense analysis reveals that ... [t]he conduct of the motorist in shooting a gun toward the plaintiff was the legal cause of plaintiff's injuries"); *Coleman v. Sanford*, 521 So.2d 876, 877 (Miss.1988) (vehicle's use in a drive-by shooting was "incidental" to the assault); *Worldwide Underwriters Ins. Co. v. Jackson*, 121 Or.App. 292, 855 P.2d 166, 168 (1993) (injury in drive-by shooting "was directly caused by some act wholly disassociated from and independent of the vehicle's use"). We find the analyses of these cases persuasive.

To the contrary, we find unpersuasive the analyses of other jurisdictions finding a sufficient causal connection in similar situations. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415 (9th Cir.1991) (applying California law); *Cung La v. State Farm Auto. Ins. Co.*, 830 P.2d 1007 (Colo.1992); *Ganiron v. Hawaii Ins. Guar. Ass'n*, 69 Haw. 432, 744 P.2d 1210 (1987); *Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876 (Minn. 1987); *Wausau Underwriters Ins. Co. v. Howser*, 422 S.E.2d 106 (S.C.1992). The logic of these opinions leads to finding uninsured motorist coverage in cases where motor vehicles are used—sometimes only tangentially—merely to assist in crimes causing bodily injuries. This would vastly expand uninsured motorist coverage beyond what the legislature surely intended, namely to indemnify drivers from accidents involving negligent, financially irresponsible drivers. *State Farm Mut. Auto. Ins. Co. v. Wilson*, 162 Ariz. 251, 254, 782 P.2d 727, 730 (1989).

Injuries such as those suffered by Ruiz do not fall within the scope of uninsured motorist coverage as defined in the policies at issue. Nor is coverage required by the uninsured motorist statute, A.R.S. § 20–259.-01(A).[3] Ruiz' injuries did not "arise out of

---

cles because of bodily injury, sickness or disease, including death, resulting therefrom.

**2.** This is not to say that these facts were not present in the *Mazon* case. *Mazon* did not mention whether the vehicle was used to assist in the attack or whether the driver even knew of the stone throwing.

**3.** We have previously held that the purpose of the uninsured motorist statute is to ensure "that every insured is entitled to recover damages he or she would have been able to recover if the offending motorist had maintained a policy of liability insurance in a solvent company." *Transportation Ins. Co. v. Wade*, 106 Ariz. 269, 273,

103

# 104

the use" of an uninsured motor vehicle; they arose out of—and were caused by—the independent, voluntary, and deliberate acts of a criminal using an uninsured vehicle not as a car, but as a gun platform. We agree with one Florida court that "arising out of the ownership, maintenance or use" means something more than "while using." *Taylor*, 622 So.2d at 509. We caution, however, that our opinion should not be read so as to preclude uninsured motorist coverage merely because a crime is implicated. The fundamental question is whether the use of the vehicle was itself the cause of the injury.

### DISPOSITION

Ruiz' injuries did not arise out of the ownership, maintenance or use of an uninsured vehicle. The trial court correctly granted defendants' motions for summary judgment. Accordingly, we affirm the trial court and vacate the opinion of the court of appeals.

FELDMAN, C.J., and CORCORAN, ZLAKET and MARTONE, JJ., concur.

475 P.2d 253, 257 (1970) (quoting *Stephens v. Allied Mut. Ins. Co.*, 182 Neb. 562, 156 N.W.2d 133 (1968)). Thus, A.R.S. § 20–259.01(A) requires that a plaintiff's bodily injury "arise out of the ownership, maintenance or use" of an uninsured motor vehicle. *See, e.g., Love*, 121 Ariz. at 74, 588 P.2d at 367 (finding no uninsured motorist coverage under the statute "because the decedent's death did not arise from the ownership, maintenance or use of the car").