TONY GANIRON, II, Plaintiff-Appellee, Cross-Appellant, *v.* HAWAII INSURANCE GUARANTY ASSOCIATION, Defendant-Appellant, Cross-Appellee

NO. 11961

(CIVIL NO. 85-3384)

NOVEMBER 10, 1987

LUM, C.J., NAKAMURA, PADGETT, HAYASHI
AND WAKATSUKI, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal from a judgment holding that appellee was covered, for the incident from which this lawsuit arose, by the provisions for no-fault and uninsured motorist coverage in the automobile insurance policy issued to him by Financial Security Insurance Company, Ltd. (FSIC), to which appellant Hawaii Insurance Guaranty Association (HIGA) is the successor-in-interest, and a cross-appeal by appellee from the order entered awarding him attorney's fees in the action. We affirm the judgment as to

insurance coverage and reverse the order as to attorney's fees.

The facts are undisputed. On January 7, 1984, appellee Tony B. Ganiron, II, was driving a car on the H-l freeway located in the City and County of Honolulu, State of Hawaii, when he was struck by a bullet from a gun fired from another vehicle on the freeway. The other vehicle and the person firing the gun have never been identified or found.

Appellee was an insured under an automobile insurance policy issued by FSIC providing no-fault and uninsured motorist coverages pursuant to the statutes of the State of Hawaii. He made a claim for benefits pursuant to those coverages. Appellant HIGA is the successor-in-interest under the statutes of the State of Hawaii to the insolvent insurer FSIC. It denied coverage and appellee then filed this suit. The court below entered two partial summary judgments holding that there was both uninsured motorist and no-fault coverage for appellee's injuries under the policy. Thereafter, appellee moved for an award of attorney's fees and the court below entered an order reducing what it found to be the reasonable attorney's fees to 55%. Subsequently, a final judgment was entered and this appeal and cross-appeal were taken.

With respect to the question of no-fault coverage, HRS § 294-2 contains the following definitions:

(1) "Accidental harm" means bodily injury, death, sickness, or disease caused by a motor vehicle accident to a person.

   .   .   .   .

(9) "Motor vehicle accident" means an accident arising out of the operation, maintenance, or use of a motor vehicle, including an object drawn or propelled by a motor vehicle.

   .   .   .   .

(12) "Operation, maintenance, or use" when used with respect to a motor vehicle includes occupying, entering into and alighting from it but does not include conduct in the course of loading or unloading the vehicle unless the accidental harm occurs in the immediate proximity of the vehicle, and does not include conduct within the course of a business of repairing, servicing, or otherwise maintaining vehicles unless the conduct occurs outside the premises of such business.

With respect to the question of the scope of the uninsured motorist coverage, HRS § 431-448(a) provides as follows:

No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, shall be delivered, issued for delivery, or renewed in this State, with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in section 287-7, under provisions filed with and approved by the insurance commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom, provided that the coverage required under this section shall not apply where any insured named in the policy shall reject the coverage in writing.

As to the question of attorney's fees, HRS § 294-30(a) provides as follows:

(a) A person making a claim for no-fault benefits may be allowed an award of a reasonable sum for attorney's fees, and reasonable costs of suit in an action brought by or against an insurer who denies all or part of a claim for benefits under the policy, unless the court or the commissioner, upon judicial or administrative proceedings, respectively, determines that the claim was fraudulent, excessive, or frivolous. Reasonable attorney's fees, based upon actual time expended, shall be treated separately from the claim and be paid directly by the insurer to the attorney.

The critical question on the two coverage issues is whether the injuries in question arose out of the operation, maintenance, or use of a motor vehicle. Cases in other jurisdictions involving similar statutory terms have reached varying results. Some, using the "causal connection" rationale, have denied coverage, holding that an injury resulting from the firing of a gun from a vehicle, as distinguished from an injury inflicted by the vehicle itself, is not covered. Other states using either a "nexus" test or a "territoriality"

test have held there is coverage in such situations. Appellee argues the territoriality test should be adopted relying on the following language from the legislative history of the Hawaii no-fault statute, appearing in Conf. Comm. Rep. No. 28-74 on Hse. Bill 2840-74:

> The industry, in testimony, cited the costly danger of having claims made for injuries sustained during loading operations which, in fact, were far removed from the parked, but insured, vehicle.
>
> Your Committee has, therefore, sought to limit this threat, and simultaneously to provide coverage for losses commonly associated with the use or maintenance of a vehicle. By using a territorial criteria for this measure, we believe we have attained a moderate and moderating resolution.

1974 Sen. Journ., pp. 776-83, 779.

It is, however, clear that the legislature never, in fact, considered the question of whether there was coverage under the no-fault statute for a person occupying a car and injured as a result of a gunshot from another car.

HRS § 294-1(a) provides:

> The purpose of this chapter is to create a system of reparations for accidental harm and loss arising from motor vehicle accidents, to compensate these damages without regard to fault, and to limit tort liability for these accidents.

From the standpoint of the unknown gunner, appellee's injuries were the result of either reckless or intentional conduct, but from appellee's standpoint, they were accidental. In our opinion, appellee's injuries fall within the definition of accidental harm as defined in HRS § 294-2(1), because the incident was a motor vehicle accident, as defined in HRS § 294-2(9), since it occurred because of the operation, maintenance, or use of the vehicles in question. Both the gunner and the appellee were occupying motor vehicles traveling on the highway when the incident occurred. If the gunner instead of shooting appellee had injured him by ramming appellee's car with his car, there would be no question that the injuries were covered. Given the policy of the statute as set forth in the language quoted above, we see no distinction between the two events.

As to the uninsured motorist coverage, the crucial term "ownership, maintenance, or use" appears in HRS § 431-448(a), although it is not there defined. To paraphrase that section, it says that if an automobile liability policy insuring against the loss resulting from liability imposed by law for bodily injury suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle is issued, then the policy must provide for the protection of persons insured thereunder, if they are legally entitled to recover damages from owners or operators of uninsured vehicles, because of such injuries resulting therefrom.

Since appellee would be entitled to recover for his injuries from the owner or operator of the vehicle from which the shot was fired, on a literal reading of the section in question there is uninsured motorist coverage for appellee's injuries.

We thus affirm the judgment below with respect to both coverages.

Turning to the cross-appeal, the trial court awarded 55% of reasonable attorney's fees. HRS § 294-30 provides for the award of reasonable attorney's fees. There is no authorization, in a situation in which a no-fault carrier resists payment, for the trial court to reduce reasonable attorney's fees because, as here, the question of coverage was a difficult or close one. We therefore reverse the judgment in part and remand with an order to the circuit court to enter a judgment allowing appellee his full reasonable attorney's fees. Affirmed in part, reversed in part and remanded.

*Carleton B. Reid (Ross N. Taosaka* with him on the briefs; *Davis, Reid & Richards* of counsel) for HIGA.

*Bert S. Sakuda (Gerald Y. Sekiya* and *Keith K.H. Young* with him on the briefs; *Cronin, Fried, Sekiya, Kekina & Fairbanks* of counsel) for Ganiron.

## DISSENTING OPINION OF WAKATSUKI, J., WITH WHOM HAYASHI, J., JOINS

I respectfully dissent.

In my view, the injury sustained by appellee did not arise out of the operation, maintenance, or use of a motor vehicle. Appellee's only injury consists of a wound resulting from a gunshot fired from

a passing vehicle. The injury obviously was not sustained by the use of either automobile. If the appellee, in response to the firing of a gun, or after being hit by the gunshot, sustained injuries from a resulting crash of his vehicle, it would be fair to argue that his injuries arose out of the operation and use of his vehicle. Here, although both the assailant and the appellee were in moving automobiles at the time of the shooting, it was the gunshot and not the automobiles driven by the assailant and appellee that caused the injury. Moreover, there is no evidence that the shooting occurred due to assailant's or appellee's operation or use of their respective automobiles. The operation and use of the vehicles were merely incidental to the primary cause of the injury.

The only factor the majority offers to support its summary conclusion that the injury arose out of the operation or use of the vehicles is that both the assailant and appellee were occupying moving vehicles at the time of the incident. This does not demonstrate, however, that the injury sustained by the gunshot was *causally* related to the use or operation of either vehicle. For coverage to be warranted, the automobiles must serve as more than merely the situs of the events. *See Continental Western Insurance Co. v. Klug,* 394 N.W.2d 872, 874-75 (Minn. Ct. App. 1986).

Finally, I find nothing in the legislative history of the no-fault law to suggest that our legislature, in "creat[ing] a system of reparations for accidental harm and loss arising from *motor vehicle accidents,*" HRS § 294-1(a) (emphasis added), intended to cover a gun-inflicted injury not causally connected to the operation, maintenance, or use of automobiles. Being shot at by a passing motorist is obviously not a natural or foreseeable risk of operating or using an automobile. *See Continental Western,* 394 N.W.2d at 875.

I would reverse the judgment granting no-fault and uninsured motorist benefits to appellee.