622 So.2d 506 (1993)
Kristine M. TAYLOR and Johnny R. Taylor, her husband, Appellants/Cross Appellees,
v.
PHOENIX INSURANCE COMPANY, Appellee/Cross Appellant.
No. 92-115.
District Court of Appeal of Florida, Fifth District.
July 16, 1993.
Rehearing Denied August 27, 1993.
*507 David D. Guiley of Maher, Gibson and Guiley, P.A., Orlando, for appellants/cross appellees.
Jeffrey M. Fleming of Rogers, Dowling, Fleming & Coleman, P.A., Orlando, for appellee/cross appellant.
GRIFFIN, Judge.
This is the appeal and cross-appeal of a summary final judgment entered in favor of appellee, Phoenix Insurance Company ("Phoenix"). The issue on appeal is whether the trial court erred in determining that the Uninsured Motorist ("UM") provision of an automobile liability policy did not cover injuries suffered by appellants because the vehicle was not an "uninsured motor vehicle" within the terms of the "hit and run" provision of the policy. The issue on cross-appeal is whether the trial court erred in determining the appellants' injury arose out of the ownership, maintenance and use of the tort-feasor's vehicle.
On April 28, 1988, appellant, Johnny R. Taylor, was driving the family car, which was insured by Phoenix, traveling north on I-95. Appellant, Kristine Taylor, and the appellants' four children were passengers. A vehicle occupied by two men, later identified only as "Willie" and "Jet", passed the appellants while pursuing another automobile driven by Ms. Honey Rose Hurley. After going through a toll booth, the passenger in the pursuit vehicle leaned out of the car window and started firing an automatic weapon at the Hurley vehicle. One of the bullets from the automatic weapon went through the windshield of the Taylor vehicle, striking Mrs. Taylor in the head, severely wounding her. Neither of the two occupants of the vehicle from which the bullet was fired was ever apprehended, nor was the vehicle from which the shots came ever identified.[1]
The lower court ruled on summary judgment motion that there was "sufficient causal connection between the use of the tort-feasor's car and the injury of the insured under the facts of this case to establish liability and coverage if, in fact, an uninsured or underinsured vehicle were being used by the tort-feasor"; however, because the car was unidentifiable, the insured could not prove the vehicle was uninsured and the "hit and run" provision of the policy excluded coverage under the facts of the case. Based on these rulings, the trial court entered summary final judgment in favor of Phoenix. Although we disagree with the lower court's reasoning, we affirm.
Initially, we conclude the "hit and run" policy provision does not preclude recovery under the policy. The policy language relied upon by the lower court provided:

Uninsured motor vehicle means a high-way vehicle or trailer of any type.
* * * * * *
4. which is a hit-and-run highway vehicle, if neither the driver nor the owner can be identified, which causes bodily injury to an insured by physical contact with the insured or a vehicle occupied by the insured.

In Brown v. Progressive Mutual Insurance Co., 249 So.2d 429 (Fla. 1971), the supreme court refused to apply virtually identical language to the facts of that case. The court explained that the only reason for the physical contact requirement in the UM provisions of an automobile policy is to prove an accident involved a phantom vehicle. If an injured party can show, however, that the incident involving a phantom vehicle did occur, he is entitled to recover *508 even absent physical contact. Id. at 430. In the instant case, there is no dispute that Mrs. Taylor was injured by gunfire from a phantom vehicle. We see no reason why the rationale of Brown is not controlling here and appellee has offered none, other than to say that Brown has never before been applied to a projectile case.
The harder question is whether there can be UM coverage where a claimant is injured by a projectile emanating from the uninsured motor vehicle. Until recently, very few courts have broadly interpreted the "arising out of the ownership, maintenance or use" policy language to find uninsured motorist, liability or personal injury protection coverage for injuries caused by projectiles thrown or shot from vehicles. See generally Larry D. Scheafer, Annotation, Automobile Liability Insurance: What Are Accidents or Injuries "Arising Out of Ownership, Maintenance, Or Use" Of Insured Vehicle, 15 A.L.R.4th 10 § 9 at 42-48 (1982); Fowler v. State Farm Mut. Auto. Ins. Co., 548 So.2d 830 (Fla. 1st DCA 1989); Florida Farm Bureau Ins. Co. v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980), rev. denied, 402 So.2d 613 (Fla. 1981).
As is often true with causation questions, however, courts have struggled to define precisely what incidents "arise out of" the ownership, maintenance or use of a motor vehicle. One court has explained that there is coverage under automobile liability or uninsured motorist insurance if the incident causing injury is in any way connected with the normal or expected uses, or incidents of use, of an automobile.[2]Farm Bureau Mut. Ins. Co. v. Evans, 7 Kan. App. 2d 60, 637 P.2d 491 (1981). Thus, an accident caused by the emptying of the contents of an automobile's ashtray out of the car window might be covered by automobile insurance, whereas the throwing of an explosive device from a car or the shooting of a gun from a car would not. Id., 637 P.2d at 494; Hamidian v. State Farm Fire & Casualty Co., 251 Kan. 254, 833 P.2d 1007 (1992). See also Wirth v. Maryland Casualty Co., 368 F. Supp. 789 (W.D.Ky. 1973) (no liability coverage for injury caused by throwing lit firecracker from moving vehicle).
In Kessler v. Amica Mutual Insurance Co., 573 So.2d 476, 478 (La. 1991), the occupant of one moving vehicle shot into another moving vehicle, wounding the victim. The Louisiana Supreme Court found the injuries did not arise out of the use of a motor vehicle, pointing out that there would have been no injury to the victim "but for" the conduct of the assailant in shooting a gun at him. The court explained that the shooting was the cause-in-fact of the injury and the shooting of a gun is wholly unrelated to the operation or use of a motor vehicle. The court considered it a matter of common sense that a bullet wound is the result of the breach of the duty not to shoot people, not the incidental action of operating a motor vehicle. Id. at 479.
In Nationwide Mutual Insurance Co. v. Brown, 779 F.2d 984 (4th Cir.1985), the insured vehicle was used to pursue the victim's vehicle, to force the victim's vehicle from the road, and to trap the victim, who was then shot by the assailant. The Fourth Circuit Court of Appeals held there was no insurance coverage because an assault with a deadly weapon upon a driver or passenger of another vehicle is not the type of incident foreseeably identifiable with the normal use of a vehicle.
We have found a spate of quite recent "shooting" cases, suggesting that, as such injuries become increasingly frequent, some courts are willing to find insurance coverage. State Farm Mut. Auto. Ins. Co. v. Davis, 937 F.2d 1415 (9th Cir.1991); Ruiz v. Farmers Ins. Co. of Arizona, 847 P.2d 111 (Ariz. App. 1992); Cung La v. State Farm Auto. Ins. Co., 830 P.2d 1007 (Colo. 1992); Wausau Underwriters Ins. Co. v. Howser, 422 S.E.2d 106 (S.C. 1992). Perhaps the frequency of these occurrences is deemed to equate with the "normal or *509 expected" use of an automobile. Other courts have not been so persuaded, however. State Farm Mutual Auto. Ins. Co. v. Spotten, 610 N.E.2d 299 (Ind. App. 1993); Ulrich v. United Services Automobile Ass'n, 839 P.2d 942 (Wyo. 1992).
The dissent relies on the reasoning of such cases as Ganiron v. Hawaii Insurance Guaranty Ass'n, 69 Haw. 432, 744 P.2d 1210 (1987). The problem with cases like Ganiron is that the court consciously and expressly refuses to recognize any distinction between an injury that occurs when two cars are traveling on the highway and one runs into the other, versus an injury that occurs when two cars are traveling down the highway and the occupant of one vehicle shoots a gun at the occupant of another vehicle. Id., 744 P.2d at 1212.[3] For us, this distinction is critical. Presumably, under the reasoning in Ganiron, if two cars were traveling down the highway, each full of passengers, and the occupant of one were to hurl insults at an occupant of the other vehicle, such defamation would "arise out of" the "operation" or "use" of a motor vehicle.
We are not persuaded by the reasoning of these cases and are unable to find that coverage exists in the present case. As expressed in the Phoenix policy, coverage arises out of the "ownership, maintenance or use of the uninsured motor vehicle." We cannot fairly conclude that the facts of this case fall within that requirement. A bullet wound does not arise out of the use of a motor vehicle. Shooting a gun is an act unrelated to use of a motor vehicle; it in no way depends on or involves a motor vehicle. See Nationwide Mut. Ins. Co. v. Knight, 34 N.C. App. 96, 237 S.E.2d 341, rev. denied, 293 N.C. 589, 239 S.E.2d 263 (1977). The fact that the location of the shooter is a motor vehicle does not mean the shooting arises out of the use of the vehicle. If the uninsured vehicle causes the injury, there is coverage; if the shooting causes the injury, there is no coverage. There is no causal relationship between the ownership, maintenance and use of an uninsured motor vehicle and injuries sustained from the gunshots fired from a motor vehicle. Shaffer at 218; Wausau Underwriters Ins. Co. v. Howser, 727 F. Supp. 999 (D.S.C. 1990); cf. Tuerk v. Allstate Ins. Co., 469 So.2d 815 (Fla. 3d DCA 1985), rev. denied, 482 So.2d 347 (Fla. 1986). We cannot ascribe to the notion expressed by one Arizona court that "arising out of the ... use" is equivalent to "while using." Ruiz at 113.
The Florida Supreme Court in Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347, 349 (Fla. 1989), quoted with approval the discussion of this issue contained in 6B J. Appleman, Insurance Law and Practice, section 4317 (Buckley ed. 1979):
Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained.
Rather, the courts have only required that some form of causal relationship exist between the insured vehicle and the accident. However, liability does not extend to results distinctly remote, though within the line of causation.
.....
Accordingly, three rather interesting rules have been set up to determine the insurer's liability: 1. The accident must have arisen out of the inherent nature of the automobile, as such; 2. The accident must have arisen within the natural territorial limits of an automobile, and the actual use, loading, or unloading must not have terminated; 3. The automobile must not merely contribute to cause the condition which produces the injury, but must, itself, produce the injury.
As pointed out by the dissent, the recent cases that have found coverage have all involved fact patterns where the vehicle was used to gain access to the victim. The victim was traveling in a moving car and a *510 moving car was used to get into firing range, which these courts deem to be significant. Courts in Florida have never before held that using a vehicle to gain access to a victim of assault will give rise to automobile insurance coverage. See Shaffer, at 217-18[4]; cf. Race v. Nationwide Mut. Fire Ins. Co.[5] The fact that a motor vehicle provides transportation to the victim and gives the shooter access to shoot a victim does not make the shooting arise out of the use of the vehicle. It does not in substance matter whether the victim is in a moving car or in a neighboring town.
There might be coverage in a case such as this one if there were evidence that the shooter missed his target and struck Mrs. Taylor due to some involvement of the motor vehicle, such as where the speed, trajectory or movement of the vehicle caused the bullet to go awry. See Quarles v. State Farm Mut. Auto. Ins. Co., 533 So.2d 809 (Fla. 5th DCA 1988), rev. denied, 544 So.2d 201 (Fla. 1989); Hutchins v. Mills, 363 So.2d 818 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1368 (Fla. 1979). See also Wyoming Farm Bureau Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 467 F.2d 990 (10th Cir.1972). In the present case, however, although there is evidence from which the jury might conclude that the shooter was aiming at Honey Rose Hurley, not the victim, the record is completely devoid of any fact that could support a finding that the uninsured vehicle was the cause of the errant shot. Any such involvement of the uninsured motor vehicle would be pure speculation.
AFFIRMED.
GOSHORN, J., concurs.
W. SHARP, J., dissents in part and concurs in part, with opinion.
W. SHARP, Judge, dissenting in part and concurring in part.
I agree with Judge Griffin's majority opinion that the "uninsured motor vehicle" was covered in this case under the uninsured motorist provisions of Phoenix's automobile policy issued to the Taylors, even though neither the uninsured car nor its driver and passenger were ever apprehended, and the uninsured car did not physically contact the Taylors' car. Numerous eyewitnesses confirmed how the accident occurred. See Brown v. Progressive Mutual Insurance Co., 249 So.2d 429 (Fla. 1971). Further, Kristine Taylor's injury resulted from a projectile (a bullet) being fired from the uninsured car into the Taylors' car. That should suffice to satisfy any contact requirement between the insured and the uninsured vehicle.[1]
However, I disagree with the majority opinion that there was an insufficient "nexus" in this case between Kristine's injury and the "ownership, maintenance or use" of the uninsured vehicle, to merit uninsured motorist coverage under the Phoenix policy.[2] Based on the record in this case *511 before the trial court at the time it entered the summary judgment being appealed, that court concluded there was a sufficient causal connection between use of the uninsured car and Kristine's injury to establish either liability coverage or uninsured motorist coverage under the policy. I agree, although if faced with this issue as a question of first impression, I might initially hold such car-to-car shootings or car-related projectile throwing cases are beyond the scope of automobile liability insurance coverage. But, there are too many precedents in Florida (as well as other states) which extend automobile liability and uninsured motorist coverage to like incidents not to find coverage exists in this case.
The record establishes (for summary judgment purposes) that the Taylors were driving north on I-95, at about 11:30 p.m. They had their four children with them. Kristine was riding in the front passenger seat, holding one child in her arms. Her husband, Johnny, was driving.
As they approached the toll booth area near the Trout River, two cars passed them in the fast lane, going at excessive speeds. It appeared to Johnny that the first car, a Toyota Corolla, being driven by a woman, was being chased by the second car, a 1980's Oldsmobile, occupied by two black males in their twenties. The north toll booths were not operating. Only the southbound lanes were then stopping traffic to collect tolls. But the northbound lanes had to squeeze into two lanes to pass through the closed toll booth area.
The Toyota slowed and almost stopped at the toll booths. The Taylors caught up with it and began to pass it, when it was caught in a line of fire aimed at the Toyota from the Oldsmobile. The Oldsmobile never slowed nor stopped. As it passed the Toyota, the passenger in the Oldsmobile leaned out of the window and fired a machine gun in the direction of the Toyota.
Kristine was hit by a nine millimeter bullet, fired from the Oldsmobile. It entered her vehicle, and "grazed" her forehead causing serious injury. Bullets sprayed from the machine gun also hit other cars in the vicinity, as well as the Taylors'.
The woman in the Toyota, Ms. Honey Hurley (the apparent target of the shooting), was hit three times and her car was riddled with bullets. Hurley identified the shooter and driver as Willie and Jet, members of a drug gang from the State Street area of Jacksonville. Willie and Jet never slowed down at the toll booth. They escaped in the Oldsmobile and were never apprehended.
In Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347 (Fla. 1989), the Florida Supreme Court clarified the scope and extent of uninsured motorist coverage as being coextensive with liability coverage. This means the term "arising out of the ownership, maintenance, and use of a motor vehicle" when used with reference to the uninsured vehicle, should receive a less liberal construction than is given to PIP coverage. The Novak case and its progeny,[3] are thus not appropriate authority to follow in cases such as this one. Coverage may be found under uninsured motorist provisions such as the one involved in this case,[4] if a showing is made that the uninsured vehicle in some manner contributed to, or added to the bodily injury suffered by the insured, and was not just the situs of the injury.
In Race, two vehicles collided at a stoplight. One motorist got out of his car and walked back to talk to the other. The motorist in the other car reached into a bag and was hit by the on-foot motorist, who claimed he thought the other was reaching for a gun. The court held that intentional injuries from the view point of the uninsured motorist and passenger, are covered by liability or uninsured motorist policies in Florida. But in this case, the court said the connection between the injury suffered and the uninsured vehicle was too tenuous.
In my view, the Florida cases (although none are factually identical to this case) *512 support coverage for Kristine's injuries. In Valdes v. Smalley, 303 So.2d 342 (Fla. 3d DCA 1974), cert. discharged sub nom National Ben Franklin Insurance Co. v. Valdes, 341 So.2d 975 (Fla. 1976), the passenger of a speeding car threw a beer mug in the direction of a group of teenagers. It hit one boy in the head, killing him. The court found liability coverage because use of the car was a substantial concurrent cause of the decedent's injuries. Without the speed of the car, the beer mug would not have been hurled with such potentially lethal force.
The shooting cases in Florida, which have denied coverage under liability or uninsured motorist provisions, have involved a single vehicle, and not two, with one pursuing another down the highway. In Hutchins v. Mills, 363 So.2d 818 (Fla. 1st DCA 1978), cert. denied, 368 So.2d 1368 (Fla. 1979), a deer hunter standing in the back of a parked pickup truck accidently shot another hunter who was on foot. The court held there was no connection between the parked truck and the injury. But, on motion for rehearing, the court cautioned that had the accident occurred while the hunter was riding in the truck and looking for game, pausing to shoot from the window, "quite a different situation would have been presented."
Similarly, in Fowler v. State Farm Mutual Automobile Insurance Co., 548 So.2d 830 (Fla. 1st DCA 1989) and Florida Farm Bureau Insurance Co. v. Shaffer, 391 So.2d 216 (Fla. 4th DCA 1980), rev. denied, 402 So.2d 613 (Fla. 1981), although the altercation leading to the shooting arose out of a driving incident or conflict between two motor vehicles, the driving had ceased. In Fowler, one motorist got out of his car and was shot by the other from his car, and in Shaffer, one car was parked off the road when the pursuing shooter fired. In both cases, the court denied coverage because the insured or uninsured car did not sufficiently "contribute" to the shooting injury.
Recent cases decided in other states involving highway shootings, which are factually similar to this case, generally support coverage under auto liability or uninsured motorist insurance provisions. See Ruiz v. Farmers Insurance Co. of Arizona, 847 P.2d 111 (Ariz. App. 1992); Thompson v. State Farm Mutual Automobile Insurance Co., 161 Wis.2d 450, 468 N.W.2d 432, reconsideration denied, 473 N.W.2d 505 (Wis. 1991); Wausau Underwriters Insurance Co. v. Howser, 422 S.E.2d 106 (S.C. 1992); Cung La v. State Farm Automobile Insurance Co., 830 P.2d 1007 (Colo. 1992); Ganiron v. Hawaii Insurance Guaranty Association, 69 Haw. 432, 744 P.2d 1210 (1987); Continental Western Insurance Co. v. Klug, 415 N.W.2d 876 (Minn. 1987); Insurance Company of North America v. Dorris, 161 Ga. App. 46, 288 S.E.2d 856 (1982). All of these cases involve automobile insurance coverage for injuries caused by vehicles chasing other vehicles on the highway, and shots being fired from one vehicle at another.[5] The courts found a sufficient causal connection between the injury resulting from the shooting and use of the automobiles. They characterized the pursuing vehicle as an "active accessory" in causing the injury because without its speed, the shooter would not have been able to shoot at the other car.[6] Further, some courts point out, use of the pursuing or firing car, gave the shooter a quick means of escape, which was also part of the undertaking.[7]
In Ganiron, the court analogized the two car-highway shooting cases to ones where one car rams another on the highway. In my view, projectiles fired from one car into another on the highway are also indistinguishable from those where an object is thrown (accidently or intentionally) from one vehicle into another, causing injury. In such cases a sufficient connection *513 between the use of a vehicle and the injury is found. See Pomerantz v. Nationwide Mutual Fire Insurance Co., 575 So.2d 1311 (Fla. 3d DCA 1991); Valdes; Foster v. Lafayette Insurance Co., 504 So.2d 82 (La. Ct. App. 1987), writ denied, 505 So.2d 61 (La. 1987); National American Insurance Co. v. Insurance Company of North America, 74 Cal. App.3d 565, 140 Cal. Rptr. 828 (1977).
In this case, the summary judgment record, read in Kristine's favor[8] established that the uninsured vehicle was chasing another car on the interstate, and only by maneuvering around the pursued car, was the shooter put in a position to fire at his target. The speed and location of the uninsured vehicle and the window of the car from which the passenger fired were necessary and active accessories to the shooting. It also allowed the shooters a quick and efficient escape. In my view Kristine's bullet wound injury is inexorably bound up with the shooter's use of the uninsured vehicle.[9] Accordingly, I would remand this cause for trial on the uninsured motorist coverage issue.
NOTES
[1] The only additional information gleaned about the two men was that they had been members of the Miami Boys, a drug gang from Jacksonville.
[2] Indeed, this is the rationale of Pomerantz v. Nationwide Mutual Fire Insurance Co., 575 So.2d 1311 (Fla. 3d DCA 1991), cited by the dissent. In that case, the accident occurred during the loading of a truck, a normal incident of the intended or expected use of the truck.
[3] We note that similar reasoning appears in Fortune Insurance Co. v. Ferreiro, 458 So.2d 834 (Fla. 3d DCA 1984); however, Ferreiro was decided on the basis of a broad test for UM coverage subsequently rejected in Race v. Nationwide Mutual Fire Insurance Co., 542 So.2d 347, 351 (Fla. 1989).
[4] In finding insurance coverage, the Colorado Supreme Court distinguished Shaffer on the basis that the victim's car was stopped at the moment of the shooting. Cung La v. State Farm Auto. Ins. Co., 830 P.2d 1007 (Colo. 1992). Under the rationale of such cases, there is coverage if the intended victim is moving.
[5] If the dissent is correct that such incidents arise out of the use of a motor vehicle, there presumably would be liability for the shooting injury on the part of an insured owner of the vehicle, even if he were not present, because of the dangerous instrumentality doctrine. Shaffer involved a claim against the liability insurer of the passenger who did the shooting.
[1] See Oanh Thi Pham v. Allstate Insurance Co., 206 Cal. App.3d 1193, 254 Cal. Rptr. 152 (1988) (physical contact requirement is met when either a part of a vehicle or an object which the vehicle is carrying strikes the insured or his vehicle); Illinois National Insurance Co. v. Palmer, 116 Ill. App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707 (1983) (insured who was injured when his vehicle was truck by lug nut flying off hit-and-run vehicle could recover uninsured motorist benefits even though insured's vehicle was not struck by hit-and-run vehicle itself).
[2] The Phoenix policy states:

We will pay coverages that the insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury suffered by the insured and caused by accident. Liability for such damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
[3] Government Employees Insurance Co. v. Novak, 453 So.2d 1116 (Fla. 1984).
[4] See footnote 2.
[5] The only exception is the Dorris case, where the injuries resulted after the chased and fired-upon vehicle lost control and turned over, injuring the passenger of the pursued vehicle.
[6] State Farm Mutual Automobile Insurance Co. v. Davis, 937 F.2d 1415, 1416-1418 (9th Cir.1991); Continental Western Insurance Co. v. Klug, 415 N.W.2d 876, 878 (Minn. 1987); Ruiz v. Farmers Insurance Co. of Arizona, 847 P.2d 111, 112 (Ariz. App. 1992).
[7] See Davis at 1420-1421; Wausau at 108.
[8] Moore v. Morris, 475 So.2d 666 (Fla. 1985); Landers v. Milton, 370 So.2d 368 (Fla. 1979); Putnam v. Eaton Construction Co., 535 So.2d 615 (Fla. 5th DCA 1988); Doe v. Ft. Lauderdale Medical Center Management, Inc., 522 So.2d 80 (Fla. 4th DCA 1988).
[9] See Quarles v. State Farm Mutual Automobile Insurance Co., 533 So.2d 809 (Fla. 5th DCA 1988) (shotgun which discharged accidently while being unloaded on gun rack affixed to a pickup truck, held sufficiently connected to use of pickup to merit automobile liability coverage).