**Earl P.K. HASKELL and Loralee K. Haskell, Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants.**

**No. CIV.01–00183 SOM/KSC.**

United States District Court, D. Hawai'i.

Feb. 8, 2002.

James J. Bickerton, Bickerton Saunders & Dang, Honolulu, HI, for plaintiffs.

Mark Morita, Richard Miller, Tom Petrus & Miller, LLLC, Honolulu, HI, for defendants.

*ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION, CLARIFYING ORDER FILED ON DECEMBER 7, 2001, VACATING JUDGMENT, AND ORDERING A STATUS CONFERENCE.*

MOLLWAY, District Judge.

## I. INTRODUCTION.

Plaintiff Earl Haskell ("Haskell"), a police officer, was injured in the line of duty. He was shot while trying to arrest Peter Moses ("Moses"). While the circumstances of Haskell's case are extremely sympathetic, the court cannot conclude that his injuries were "caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle." Those injuries arose out of Haskell's attempt to arrest Moses. Any "use" of a vehicle had completely stopped as a matter of law by the time Haskell was shot, no matter how the court analyzes the phrase "arising out of the operation, maintenance or use of an uninsured motor vehicle." To hold otherwise, as Haskell would have this court do, would mandate coverage anytime an "accident" was in any way related to the "use" of an uninsured motor vehicle, no matter how tangential the relationship was between the accident and the use of the vehicle. Under Haskell's argument, if a person got into an accident with an uninsured motor vehicle, and then, several weeks later, got into a second accident with an insured motor vehicle while taking his or her car to have the damage from the first accident fixed, that person would have uninsured motorist coverage for physical injuries received in the second accident. Such a holding would expand insurance coverage beyond anyone's wildest imagination. The test for uninsured motorist coverage is surely not that broad.

Nevertheless, pursuant to Fed.R.Civ.P. 59(e), Haskell asks that the court reconsider its order granting summary judgment

in favor of Defendant State Farm Automobile Insurance Company ("State Farm"), arguing that this court committed manifest errors of law and fact. Many of the alleged "errors" are raised by Haskell for the first time in this motion. Even if the court were to consider these new arguments, the court would find no error. Moreover, the court notes that Haskell cites this court's order out-of-context on numerous occasions, arguing that it stands for something that it does not. As Haskell has failed to demonstrate any manifest error of law or fact, the court denies Haskell's motion for reconsideration. However, by this order, the court, without changing the result of its earlier ruling, clarifies its earlier statement of the standard enunciated in *Dawes v. First Ins. Co. of Haw.*, 77 Hawai'i 117, 883 P.2d 38, *recon. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994). The court also vacates the judgment, only because, in arguing that less than $75,000 is at issue in this case, Haskell has highlighted for the court the pendency of issues concerning personal injury protection coverage. The judgment is vacated only so that the parties may address those issues.

## II. STANDARD OF REVIEW.

Rule 59(e) authorizes motions to alter or amend judgment. Under Fed.R.Civ.P. 59, this court has the discretion to reopen a judgment, take additional testimony, amend findings of fact and conclusions of law, or make new findings and conclusions. *Defenders of Wildlife v. Bernal*, 204 F.3d 920, 928–29 (9th Cir.2000). Rule 59(e) motions may be granted for four reasons: 1) to correct a manifest error of law or fact upon which the judgment is based; 2) to present newly discovered or previously un-

available evidence; 3) to prevent manifest injustice; and 4) to account for an intervening change in controlling law. 11 Charles Alan Wright, Arthur Miller, and Mary Kay Kane, *Federal Practice and Procedure* § 2810.1 (2d ed.1995). Motions to alter or amend judgment "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." *Id.*

Haskell argues that this court committed manifest errors of law or fact.

## III. ANALYSIS.

### A. This Court Did Not Err With Respect to Haskell's Ambiguity Argument.

Haskell first argues that the court erred in not analyzing the language in the policies separately from statutory requirements. Haskell says that, if the court had analyzed the policies' language to determine whether the coverage provided by contract exceeded that required by statute, the court would have concluded that the language was ambiguous and would then have recognized the applicability of Montana's "flowing from" test. Haskell is wrong.

Based on *Wendell v. State Farm Mut. Auto. Ins. Co.*, 293 Mont. 140, 974 P.2d 623 (1999), Haskell claims that the words "arising out of the operation, maintenance or use of an uninsured motor vehicle" in the policies are ambiguous. Haskell raises the alleged ambiguity in the policies for the first time on this motion.[1] Haskell certainly could have raised this issue when he filed his motion for summary judgment.

---

1. Haskell argues that he raised this issue at the hearing on the cross-motions for summary judgment. At most, Haskell said at the hearing that, because the insurance policies did not define "operation, maintenance, or use of an automobile," that phrase should be "con-

strued against the insurer." Transcript of Hearing (Dec. 3, 2001) at 11. Even if, in so stating, Haskell could be said to have argued that the "arising out of" language was ambiguous, an argument raised for the first time at a hearing is untimely.

Rule 59(e) does not allow Haskell to raise this argument now.[2]

Even were the court to analyze Haskell's argument, Haskell would fail. The plaintiff in *Wendell* had been punched in his face after rolling down his vehicle's window immediately after he had stopped driving. The plaintiff was then dragged out of his car and beaten by men who had been following him in another vehicle. *Id.* at 626. *Wendell* held that there was a question of fact as to whether the plaintiff's injuries originated from, grew out of, or flowed from the use of an uninsured vehicle. *Id.* at 639–40.

In *Wendell,* the court noted that, when an uninsured vehicle was the instrumentality (the legal cause) of the insured's injuries, the average policyholder would certainly believe that his or her injuries arose out of the use of the uninsured vehicle. However, *Wendell* noted that the average policyholder would also believe that, when an uninsured vehicle was not the instrumentality causing the injuries, but was a "prime accessory, without which the injury-producing incident or the severity of the injuries would not have occurred," his or her injuries arose out of the use of the uninsured vehicle.[3] *Id.* at 638–39. Thus, the Montana Supreme Court concluded that the "arising out of the use" language was susceptible to more than one interpretation, depending on the uninsured vehicle's relationship to the accident. The court held that, for purposes of uninsured motorist coverage, the policy should be read to cover an insured's injuries that arose out of the use of an uninsured vehicle "if the injuries originate[d] from, or [grew] out of, or flow[ed] from the use of the uninsured vehicle." *Id.* at 639. The Montana Supreme Court noted that, while this expansive test was required, each situation should be analyzed on a case-by-case basis. A case with only a remote or tenuous causal relationship between an insured's injuries and the use of the uninsured vehicle should not be viewed the

2. In making this argument, Haskell misconstrues this court's order in several respects. For example, on page 5 of the motion for reconsideration, Haskell states that this court "concluded that the UM **statute** mandates coverage only for injuries that occur 'during,' 'concurrent to' or 'in the course of' the use and not for injuries that occur three minutes later." The court did not lay out such a "bright-line" rule. *See* Order (slip op.) at 17 ("Critical to this court is the passage of at least three minutes (and probably more) between when Moses left the Pontiac and when Haskell was shot. The court is not stating a bright-line rule that being out of the car for more than three minutes always breaks the causal link. Hawaii case law precludes such a rule"). This court did not rule that the uninsured motorist statutes apply only to injuries occurring "during" the use of a vehicle. The court did say that it "would have to perform mental gymnastics to find that Haskell was a pedestrian who was injured 'during the chain of events ... caused by an accident involving an uninsured motor vehicle.' " Order at 15. This is a far cry from restricting

coverage to injuries sustained from an accident occurring "during" the use of a vehicle. Nor did the court say that uninsured motorist statutes apply only to injuries occurring "concurrent to" or "in the course of" use of a vehicle. The court merely referred to cases in which the injuries were concurrent with vehicle use. *See* Order at 18 ("The court notes that none of the authorities cited by Haskell demonstrates entitlement to coverage. Except for *Dawes,* all of those cases involve injuries concurrent to some actual use of a car"); Order at 13 ("the Hawaii Supreme Court held that, for uninsured motorist coverage, the loading and unloading that constitutes use of a vehicle is clearly limited to the context of conduct in the course of loading or unloading the vehicle") (*internal quotations* omitted).

3. No uninsured vehicle actually caused Haskell's injuries. Nor was an uninsured vehicle a "prime accessory, without which the injury-producing incident or the severity of the injuries would not have occurred."

same as a case in which the two are "inextricably linked." *Id.*

In the present case, unlike in *Wendell,* no reasonable juror would think that Haskell's injuries originated from, grew out of, or flowed from Moses' use of the Pontiac (even assuming that breaking into the Pontiac with intent to steal it or steal something in it was a "use"). The "use" of the uninsured vehicle was not "inextricably linked" to the shooting of Haskell. Instead, there was only a remote or tenuous causal relationship between Haskell's injuries and the use of the uninsured vehicle. As this court concluded in the order, the causal link was broken as a matter of law by the events that occurred outside the Pontiac. Order at 15–17. Accordingly, even if the court accepted Haskell's ambiguity argument, the result would not change.

Haskell additionally argues that the accident in this case occurred when he was shot by Moses. Under the language of the policies, uninsured motorist coverage is available if Haskell's injuries were "caused by an accident arising out of" the use of an uninsured motor vehicle. Haskell says that the shooting could not break the chain of causation between the accident and the injury because it was, in fact, the accident. Haskell misses the point. Even if the "accident" was the shooting, the "accident" did not arise out of the use of an uninsured motor vehicle. Instead, the "accident"/shooting arose out of an attempt to arrest Moses after he had been outside the vehicle for at least three minutes. Any "use" of the vehicle was merely the basis for the arrest.

### B. *This Court Did Not Err In Its Discussion of Moses' Alleged Use of the Pontiac.*

Haskell next argues that the court erred by not addressing an argument he admittedly raised for the first time in his reply memorandum—that the alleged attempt to steal the Pontiac was a use. This argument does not justify reconsideration. First, the local rules provide that "[a]ny arguments raised for the first time in the reply shall be disregarded." Local Rule 7.4. Moreover, the statement is flat out wrong. Notwithstanding Local Rule 7.4, beginning on the bottom of page 13 of the order, the court addressed Haskell's argument that Moses was "using" the Pontiac when Moses was allegedly trying to steal it. Even if Moses was using the Pontiac when he was allegedly attempting to steal it, Haskell shows no manifest error of law or fact on this motion, as Haskell has not demonstrated that the accident arose out of that alleged use (the attempted stealing of the Pontiac). Any accident arose out of the attempted arrest of Moses several minutes after Moses had moved away from the Pontiac.

### C. *The Court Did Not Misapply Dawes.*

Haskell accuses the court of quoting *Dawes* out of context and therefore misapplying the holding in *Dawes.* It is Haskell, however, who is attempting to pervert the holding in *Dawes. Dawes* did not arise out of an injury in any way connected with the "loading" or "unloading" a vehicle. Instead, the discussion in *Dawes* regarding "loading" and "unloading" arose out of the Hawaii Supreme Court's attempt to demonstrate that uninsured motorist coverage extends to pedestrians injured when some connection with an insured vehicle is shown, even if the accident does not occur in the immediate proximity of the insured vehicle. *Dawes,* 77 Hawai'i at 131–32, 883 P.2d at 52–53. Accordingly, *Dawes* found uninsured motorist coverage for a passenger who had been inside an insured vehicle that broke down and who was killed by an "uninsured vehicle" as she was walking from the bro-

ken vehicle to get help or alternative transportation. *Id.* at 120, 883 P.2d at 40. The court noted that "the crucial element with respect to such claimants is a sufficient connection with the insured vehicle." *Id.*, 77 Hawai'i at 132, 883 P.2d at 53 (quotation omitted). The person killed in *Dawes* had such a connection.

Citing *Dawes*, Haskell argues that he was injured as a result of Moses' attempt to "unload" the Pontiac (e.g., steal the bag inside of it). *See* Cross-motion for Summary Judgment (November 13, 2001) at 10. As a matter of law, the chain of causation between Moses' attempt to "unload" the Pontiac and Haskell's injuries was broken by the passage of time, the officers' attempt to arrest Moses, and by Moses' intentional tort. Under these circumstances, it cannot be said that Moses' "unloading" of the Pontiac "started the chain of events which resulted in" Haskell's injuries. *Dawes*, 77 Hawai'i at 132, 883 P.2d at 53. Accordingly, Haskell's "proximity" argument is unpersuasive.[4]

**D. *The Court Did Not Err in Its Causation Analysis.***

Haskell argues that this court erred by requiring a "direct" causal connection between his injuries and Moses' use of an uninsured vehicle. He says that, under *AIG Haw. Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 851 P.2d 321 (1993), only a "minimal causal connection" is necessary, not a "direct" causal connection. Haskell misinterprets this court's order. Although *Caraang* stated that the plaintiff in that case had more than a "minimal causal connection," *Caraang* did not interpret "minimal" to mean anything having to do with the use of an uninsured vehicle no matter how tangential. *Id.* at 640–41, 851 P.2d 321. Instead, *Caraang* reasoned that more than a "minimal causal connection" was present in that case because the vehicle was an "active accessory" to the gunshot injury, no act of independent significance broke the causal link, and the death caused by the gunshot resulted from the use of the vehicle. *Id.* When the court used the word "direct" in the order, it was

**4.** Haskell is probably correct in his understanding of the word "it" in the phrase "by the plain language of HRS § 431:10C–103(13), it is clearly limited to the context of conduct in the course of loading or unloading the vehicle." *Dawes*, 77 Hawai'i at 132, 883 P.2d at 53. This court had read "it" as referring to section 431:10C 103(13), but the antecedent of "it" may, as Haskell argues, be the "proximity requirement." Given the context of the statement in *Dawes*, the Hawaii Supreme Court appears to have been attempting to limit the proximity requirement to allow the plaintiff in that case to recover uninsured motorist benefits even though she was not in close proximity to the insured vehicle. For purposes of clarification, the paragraph at the bottom of page 12 and top of page 13 is amended to read:

Haskell's interpretation of the word "unload" is untenable. As noted above, a person is "using" a motor vehicle for purposes of uninsured motorist coverage when "occupying, entering into, and alighting from"

the vehicle. Haw.Rev.Stat. § 431: 10C–103. Hawaii's insurance code states that "using" does not include "loading" or "unloading" a vehicle "unless the accidental harm occurs in the immediate proximity of the vehicle." *Id.* The Hawaii Supreme Court noted that it is doubtful that the "immediate proximity of the vehicle" requirement was intended to apply to Hawaii's uninsured motorist statutes. In any event, for purposes of uninsured motorist coverage, the Hawaii Supreme Court limited that proximity requirement "to the context of conduct 'in the course of loading or unloading the vehicle.'" *Id.* Because Moses had been outside the vehicle (and no longer attempting to steal the bag or the Pontiac) for at least three minutes before he shot Haskell, it cannot be said that Haskell was injured in the course of unloading the Pontiac.

As discussed above, however, this amendment does not affect this court's analysis, as the chain of causation was broken in this case.

referring to an unbroken chain of causation. *See* Order at 15–16. Accordingly, Haskell has shown no manifest error on this point.

▮ Haskell then argues that this court should not rely on *State Farm Mut. Auto. Ins. Co. v. Fernandez,* 767 F.2d 1299 (9th Cir.1985), which Haskell claims was superseded by *Caraang* and *Ganiron v. Hawaii Ins. Guar. Assoc.,* 69 Haw. 432, 744 P.2d 1210 (1987). In essence, Haskell claims that, under *Caraang* and *Ganiron,* an intentional tort such as a gunshot does not break the chain of causation for purposes of uninsured motorist benefits. Hawaii's courts have not gone that far. Instead, they have merely held that "an intentional act does not necessarily sever bodily injury caused thereby from the 'use' of an insured vehicle." *Caraang,* 74 Haw. at 639, 851 P.2d at 330. In both *Ganiron* and *Caraang,* persons were injured when shot while they were driving. The shooters were persons in other moving vehicles. Both *Ganiron* and *Caraang* found that the gunshot injuries arose out of the use of vehicles. By contrast, neither Haskell nor Moses was in a vehicle at the time Moses shot Haskell. *Ganiron* and *Caraang* are clearly distinguishable and do not foreclose this court from considering Moses' intentional tort as one factor in determining whether Haskell's injury was caused by an accident arising out of the use of an uninsured car. The passage of time outside the vehicle, the officers' attempt to arrest Moses, and Moses' intentional tort all contributed to this court's conclusion that, as a matter of law, the chain of causation was broken in this case.

To the extent that Haskell additionally argues (for the first time) that his injuries were either a "foreseeable" or a "normal consequence" of Moses' unauthorized entry into the Pontiac and therefore that the chain of causation was not broken, Haskell improperly expands the causation analysis. If the court were to follow Haskell's reasoning, coverage would also exist when a police officer was injured while trying to arrest a resisting suspect in the penthouse of a high-rise for having allegedly broken into a car the day before. Nothing in the policies or the statutes suggests that uninsured motorist coverage was intended to extend that far, essentially becoming general insurance for criminal acts.[5]

### E. *This Court Has Subject Matter Jurisdiction.*

Having lost his summary judgment motion, Haskell now says that this court lacks subject matter jurisdiction. This case was removed based on diversity jurisdiction, and Haskell now says that less than $75,000 is at issue. A plain reading of the Complaint belies this contention. Because State Farm proved by a preponderance of the evidence that more than $75,000 was in issue at the time of removal, this court has subject matter jurisdiction.

▮ When a case is removed to federal court, there is a strong presumption against federal court jurisdiction. *Gaus v. Miles,* 980 F.2d 564, 566 (9th Cir.1992) (citing *Nishimoto v. Federman–Bachrach & Assocs.,* 903 F.2d 709, 712 n. 3 (9th Cir.1990)). The defendant, who is the removing party, always bears the burden of proving the propriety of removal, including jurisdiction. *Gaus,* 980 F.2d at 566; *Nishimoto,* 903 F.2d at 712 n. 3; *Trenton v. Infinity Broadcasting Corp.,* 865 F.Supp. 1416, 1421 (C.D.Cal.1994). The Ninth Circuit strictly construes the removal statute against removal jurisdiction. *Gaus,* 980 F.2d at 566; *Dunn v. Pepsi–Cola Metro.*

---

**5.** Because Haskell's other arguments on this point were not raised in the motions, and because those arguments could have been so raised, Haskell fails to meet the Rule 59(e) standard.

*Bottling Co.,* 850 F.Supp. 853, 855 (N.D.Cal.1994). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id.*

■■■ For removal to be proper in a diversity case, the party asserting federal jurisdiction has the burden of proving that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *Gaus,* 980 F.2d at 566. When there is a claim on the face of the original complaint for an amount in excess of the jurisdictional amount, the claim must be overcome to a "legal certainty" to defeat removal. *St. Paul Mercury Indem. Co. v. Red Cab. Co.,* 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938). However, the legal certainty rule does not apply when the plaintiff's complaint does not allege a specific amount. *McCorkindale,* 909 F.Supp. at 652. When the complaint does not allege a specific amount, as in this case, the removing defendant must prove by a preponderance of the evidence that the amount in controversy meets the jurisdictional amount. *Id.; Dyrda v. Wal–Mart Stores,* 41 F.Supp.2d 943, 948 (D.Minn.1999). "The jurisdictional facts must be judged at the time of the removal, and any post petition affidavits are allowable only if relevant to that period of time." *Dyrda,* 41 F.Supp.2d at 948. *Accord Miranti v. Lee,* 3 F.3d 925, 928 (5th Cir.1993).

■■■ State Farm proved by a preponderance of the evidence that more than $75,000 was at issue at the time of removal. Based on the insurance policies, Haskell sought from State Farm $70,000 in stacked uninsured motorist coverage and $10,000 in No Fault, or Personal Injury Protection ("PIP"), coverage. In the Complaint, Haskell alleged that State Farm had denied his request for both of these coverages. Complaint (Sept. 11, 2000) ¶ 19. Haskell further alleged that State Farm was obligated to provide both uninsured motorist and PIP coverage. Complaint ¶ 20. Haskell prayed for a declaratory judgment that he was entitled to uninsured motorist coverage. Although Haskell did not specifically pray for a declaration that State Farm owed him PIP benefits, it is apparent from the face of the Complaint that Haskell was seeking PIP coverage. *See Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 377 (9th Cir.1997) ("The district court may consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy"). Haskell prayed for his reasonable attorney's fees and costs for State Farm's alleged improper denial of his PIP benefits.[6] This indicates that Haskell was certainly seeking both uninsured motorist and PIP benefits.[7] The uninsured motorist coverage of $70,000

---

6. In the Complaint, Haskell sought to recover attorneys' fees, costs, and other expenses pursuant to Haw.Rev.Stat. §§ 431:10C–211 and 431:10C–304(5), both of which allow attorneys' fees and costs to be recovered when an insurer improperly denies PIP benefits. As these statutes only pertain to recovery of attorney's fees and costs when PIP coverage is wrongly denied, PIP coverage is clearly at issue in this case.

7. Haskell's actions in zealously litigating this matter add additional support to the conclusion that more than $75,000 is in controversy. Presumably, had Haskell honestly intended to limit himself to less than the jurisdictional

amount, he would have promptly moved for a remand, instead of raising and opposing summary judgment arguments on their merits. This court issued its summary judgment ruling on December 7, 2001. On December 21, 2001, Haskell filed both his reconsideration motion and a remand motion. It appears that Haskell is only now contesting the amount in controversy because summary judgment was granted against him. This court had referred the remand motion to the Magistrate Judge but now rescinds that referral and denies the remand motion without a hearing pursuant to Local Rule 7.2(d), which provides that "[t]he court, in its discretion, may decide any motion without a hearing."

plus the PIP coverage of $10,000, as well as Haskell's claim of entitlement to attorney's fees and costs, indicates that Haskell was seeking more than $75,000 at the time this action was removed. Accordingly, the court has subject matter jurisdiction.

## IV. *CONCLUSION.*

For the foregoing reasons, the court denies Haskell's motion for reconsideration. However, in the manner noted above, the court clarifies its earlier order regarding the standard enunciated in *Dawes v. First Ins. Co. of Haw.*, 77 Hawai'i 117, 883 P.2d 38, *recon. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994). The court vacates the judgment so that the parties may address the PIP coverage issues in this case, which were not expressly addressed in the summary judgment motions. Although the issues raised by the PIP coverage appear to mirror those raised by the uninsured motorist coverage, the court affords the parties the opportunity to discuss PIP issues by way of a status conference with the Magistrate Judge. The parties are therefore directed to contact the Magistrate Judge assigned to this case immediately to discuss the status of the PIP coverage, whether the court's analysis regarding uninsured motorist benefits should apply to the PIP coverage issues, and whether judgment may be re-entered. Without waiving appellate challenges to the merits of this court's earlier ruling, the parties may stipulate that the uninsured motorist ruling applies to PIP issues. Should the parties so stipulate, judgment will be re-entered.

IT IS SO ORDERED.